JACKSON, ex *dem.* EDWARD C. SAUNDERS & EDWARD C. SAUNDERS, Jun. *against* CADWELL.

A bill of exceptions does not draw the whole matter into examination, but only the points upon which it is taken; and the party excepting must lay his finger on those points, which might arise either in admitting or denying evidence, or matter of law arising from a fact not denied, in which either party was overruled by the court.

EJECTMENT, for 6 acres, being part of lot No. 16, in the tract of land set apart by the state to the heirs of *Peter Obsequette*, situate in the county of *Oneida.* The cause was

A conveyance, without a valuable consideration, cannot operate as a bargain and sale, under the statute of uses.

And to give it the effect of a covenant to stand seised to uses, it must be made on the consideration of blood or marriage.

*A*, by writing sealed, and endorsed on a lease for three lives, declared as follows: I do, as my own free will and gift, assign and set over all my right, title, and interest in and to this lease, with all the conditions and reservations therein contained, unto *E. C. S.* my grand-son, an infant child, this day 8 months and 5 days old, to be his property and real estate, which is to be on the following conditions, namely: to remain in the hands of his mother, *M. S.* for the use, benefit and support of the said *E. C. S.* till he shall arrive at the age of 21, which will be, &c. on which day he is to come into possession of this lease, and all the benefit therein contained:' *held*, that this was not operative by way of bargain and sale for want of a valuable consideration; nor as a covenant to stand seised, for want of relation by blood between the assignor and *M. S.* she being his daughter-in-law; and not being accompanied with livery of seisin, it was inoperative for any purpose.

Whether an instrument in this form would be valid as a devise? Quere.

In an action of ejectment by the assignor and *E. C. S.* jun. *held*, that *M. S.* was a competent witness; for as the conveyance was void, she had no interest.

It seems, a *bona fide* purchaser of lands on an execution issued upon a judgment which has been paid, but on which no satisfaction is entered of record, nor the execution returned satisfied, will be protected in his purchase;

But it is otherwise, if he have notice of the payment, either actual or presumptive.

If the party to the execution purchase, he will not be protected, for he is chargeable with notice.

tried at the *Oneida* Circuit, on the 19*th* day of *November*, 1821, before his Honor, the late Mr. *Justice* PLATT.

The plaintiff gave in evidence, a lease of the whole of lot No. 16, executed pursuant to the statute, to *Clark Saunders* and his heirs, for three lives, (all of which were then unexpired ;) an assignment of this lease from *Clark Saunders* to his fathe r, *Edward C. Saunders,* (one of the lessors) on the 6*th* day of *May,* 1815 ; also an assignment from *Edward C. Saunders,* to *Clark Saunders,* the son, dated the 30*th* of *April,* 1816. The plaintiff then gave in evidence a lease of the premises in question, from *Clark Saunders,* the son, to *Edward C. Saunders,* the father, for the consideration of 200 dollars, for the lives mentioned in the original lease, at a rent of 75 cents per annum, which lease was dated *September 5th,* 1816, and to which *Lydia Campbell,* daughter of *E. C. Saunders,* was the subscribing witness.

The plaintiff then gave in evidence, the following instrument in writing : " *Westmoreland, October 22d,* 1816..Know all men by these presents, that I, *Edward C. Saunders,* of the town of *Westmoreland,* county of *Oneida,* and state of *New-York,* do *this day,* as my own free will and gift, *bequeath, assign,* and set over, *all my right, title and interest* in and to this lease, with all the conditions and reservations therein

ALBANY,
Feb. 1824.

JACKSON
v.
CADWELL.

So if one afterwards purchase of him, with notice that the defendant, whose proper- ty was sold, claims it, and the latter purchaser takes an indemnity from the first, he will not be deemed a *bona fide* purchaser.

To constitute a *bona fide* purchaser, it is not enough to show a conveyance good in form ; but payment of the consideration must be made out. It must be actually paid ; not merely secured to be paid ; for otherwise the purchaser would not be hurt.

That one is a *bona fide* purchaser, is a defence generally confined to a court of equity.

It is used to defend one's possession : but is not a ground for relief.

Knowledge that another has claim to land, is enough to put the party on. enquiry, and charge him with presumptive notice ; which is, where the law imputes to a purchas- er the knowledge of a fact of which the exercise of common prudence and ordinary dil- igence must have apprized him.

A conveyance to defraud creditors, is valid as between grantor and grantee, but void as to creditors.

But to enable a creditor to contest the validity of the conveyance, he must have a judg- ment in full force.

If it be paid, a sale under it and a purchase by the plaintiff, would itself be a fraud and confer no right.

In ejectment for land, conveyed expressly in trust to support an infant child, the mother is not a competent witness in behalf of the child : for the trust estate may be appli- ed by the parents in support of the child.

A *bona fide* purchaser at sheriff's sale upon execution not absolutely void, but void- able only, acquires a good title.

contained, unto *Edward C. Saunders, junior,* my grandson, an infant child, this day 8 months and 5 days old, to be his property and real estate, which is to be on the following conditions, namely : This lease is to remain in the hands of his mother, *Mary Saunders,* for the use, benefit and support of the said *Edward C. junior,* till he, the said *Edward,* shall arrive at the full and just age of 21, which will be on the 17*th* day of *February,* A. D. 1837, on which day he is to come into possession of this lease, and of all the benefits therein contained. In witness, &c." (Signed) *Edward C. Saunders.* (L. S.) *Edward C. Saunders, junior,* was the son of *Clark Saunders,* and one of the lessors of the plaintiff. The plaintiff also proved that *Edward C. Saunders,* the father of *Clark Saunders,* and the grandfather of *Edward C. Saunders, junior,* was, at the time of the trial, and for the last 8 years had been, a poor and infirm old man, apparently dependant on *Clark Saunders,* his son, for the support of himself and his wife, and that he and his wife had, during that period, lived in the family of *Clark Saunders.* They all continued to reside on the premises in question from the time when the original lease was executed, till the 7*th* of *May,* 1820, when they were dispossessed under an *habere facias possessionem,* issued on a judgment in ejectment, in this Court, against *Clark Saunders,* on the demise of *Russel Clark* and 5 others. The defendant, the next day, went into possession, claiming under *Russel Clark* and his partners, who were the owners of a furnace in *Westmoreland,* and were commonly called the Furnace Company ; but the name of the firm was *Russel Clark & Co.*

The defendant then read in evidence an assignment under seal, endorsed on the original lease, dated *November* 21*st,* 1816, from *Clark Saunders* to *Russel Clark & Co.* excepting the 6 acres, which assignment was expressed to be for the consideration of 600 dollars ; under which assignment, on the same lease, was written these words : " I hereby release the 6 acres of land above mentioned, in consideration of ten dollars. Dated 1*st January,* 1817. *Clark Saunders.*"

The last writing was not sealed ; and his Honor, the Judge, intimated that, for this reason, it was not sufficient to pass the title.

The defendant then proved two judgments in the Common Pleas of *Oneida* county, one of which was against both *Clark & Edward C. Saunders*, for $50,66, in favour of *Jesse S. Olmstead*, and docketed *May* 30*th*, 1817: the other was against *Clark Saunders* alone, in favour of *Russel Clark & Co.* for $614,74, and docketed on the 10*th January*, 1817. The defendant also proved, that by virtue of writs of *fi. fa.* issued upon these judgments, the Sheriff of *Oneida* county had, on the 1*st* of *April*, 1818, sold the whole of lot No. 16, and another lot to *Russel Clark*, and read in evidence a Sheriff's deed thereof to him. He then read in evidence an assignment of the original lease from *Russel Clark* to the defendant, dated the 8*th* of *May*, 1820, for the consideration of 700 dollars. Neither of the executions had been returned or endorsed satisfied. The plaintiff then offered to prove that the judgments had been paid before the sale upon the executions. To this evidence, the counsel for the defendant objected, and his Honor, the Judge, decided, that he would hear the evidence, reserving the point for the present. The plaintiff then called several witnesses to show that the judgments were paid, (whose testimony was set forth in the written case, but it is not material to state it here;) and he offered *Mary Saunders*, wife of *Clark Saunders*, and the mother of *Edward C. Saunders, junior*, as one of the witnesses to shew the payment; but she was objected to by the defendant, as interested, by reason of the trust and benefit created to her and her husband by the assignment to their infant child, and was rejected by the Judge as incompetent.

The evidence on the subject of the payment of the judgments then proceeded, till it was interrupted by his Honor, the Judge, who expressed his opinion, that *Cadwell*, the defendant, being a *bona fide* purchaser of *Russel Clark*, his title would not be affected, even admitting the judgments had been paid and satisfied before the sale.

The plaintiff then called *Josiah Hale*, who testified that he held a conversation with *Cadwell*, the day before he bought of *Clark*, in which it was mentioned that *Edward C.*

*Saunders* laid some claim to the premises in question, but to what extent, or upon what it was founded, was not stated. And nothing was said between them about the judgments, executions or sale under them, or the title of the Furnace Company. That the next day, and after the sale, *Cadwell* told him, that when he bought of the Furnace Company, they indemnified him.

His Honor, the Judge, expressed his opinion, that *Cadwell* must nevertheless be deemed a *bona fide* purchaser, unless more certain knowledge could be brought home to him before he bought the claims of *Edward C. Saunders ;* that his having heard vaguely, that *Edward C. Saunders* had a claim generally to the land, as stated by the witness, was not sufficient to affect his title ; that he was a purchaser upon valuable consideration, on the faith and validity of the Sheriff's sale, and it was immaterial whether the executions were paid or not before the sale under them, provided they were not returned satisfied, or satisfaction entered of record, which was not pretended in this case, unless the jury should believe (of which he saw no evidence) that the defendant had notice that the executions were in fact paid. He therefore instructed the jury, that their verdict should be governed by their opinion of the fact, whether the conveyance from *Clark Saunders* to his father, *Edward C. Saunders*, was fraudulent or not. To this charge and direction, the counsel for the plaintiff excepted ; and the Judge signed and sealed a bill of exceptions, containing facts of which the above are a short abstract. The jury found a verdict for the defendant.

A motion was now made to set aside the verdict and for a new trial.

*H. R. Storrs*, for the defendant, made the following points :

1. Admitting *Cadwell* to be a *bona fide* purchaser without notice, yet no title passed by the Sheriff's sale, if the judgments were paid. His Honor, the Judge, erroneously charged the jury that this point was immaterial.

2. *Cadwell* was not a *bona fide* purchaser. He had notice sufficient to impose on him the risk of the claim of *Edward C. Saunders.*

3. *Russel Clark* was not a *bona fide* purchaser. He was one of the plaintiffs in the execution, and *Cadwell's* title is a mere *assignment* of the *right* of *Clark.*

4. *Mary Saunders* was a competent witness, and should have been admitted as such.

He said, it was immaterial whether the assignment of the lease to *Edward C. Saunders* was fraudulent or not; for one of the judgments upon which the sale took place, was against both *Edward C.* and *Clark Saunders.* The Judge erred, therefore, in submitting the cause to the jury, upon the single question, whether this assignment was valid. He should have suffered the evidence to proceed upon the question of payment. If the judgments were paid, the plaintiffs ceased to be creditors, and were not qualified to make the objection of fraud. Had a *scire facias* issued against the party, and he had neglected to plead the payment, he might have been precluded ; but he has had no chance of trying the question. A judgment is a mere *lien* upon the land.(a) It divests no interest—conveys no title from the debtor. It is not a right in the land, but a mere germ from which a title may spring ; and, like all other *liens,* may be extinguished by payment, or other matter *in pais.* It is not necessary, to render a judgment inoperative, that the payment should be entered on the record. The whole virtue of a judgment depends upon its subsistence, and it would be absurd ' say that a paid judgment is a *lien.* The sale of lands *fi. fa.* is in virtue of the statute,(b) which conten  le on unpaid judgments only. The case of *Jackson* .se,(c) is in point. It was there held that a sale of lands by the Comptroller, for taxes, is of no validity, if the taxes were, in fact, paid to the collector ; and that the deed executed by the Comptroller to the purchaser conveys no title. In that case, the *lien* is created by statute, and the return of non-payment, by the collector, is on oath : yet the *lien* was holden to be extinguished by payment. A Sheriff's sale is not in virtue of the execution, but the judg-

(a) 1 R. E. 501, s.2.

(b) id. 502-3.

(c) 18 John. 441.

(d) *Hewson*
v. *Dygert,* 8
*John.* 333.
*Williams* v.
*Amory,* 14
*Mass. Rep.* 20.
*Sims* v. *Kandall,* 2 *Bay's*
*Rep.* 524.

ment. The execution is a mere mandate or authority to the Sheriff,(d) and it would not be warranted by a judgment which is satisfied. The case is like a statute sale under a mortgage, which can only be conducted in a given way. On paying the money, the mortgage would clearly be discharged, without a release, and the purchaser could not hold, though he purchased upon the faith of a *lien* created by the very party who objects to the purchase. The Judge decided that satisfaction of a judgment, to make it available, must be entered of record; proceeding upon the ground that because the law had provided one way of evincing satisfaction, this was the only mode of doing it. It might be said, with the same propriety, that because the statute has authorized the discharge of a mortgage to be recorded, on its being properly proved or acknowledged, that therefore a mortgage can be discharged in no other way. This is a stronger case than that of a judgment. The statute points out the form of the discharge. The party selling upon a mortgage proceeds upon a power coupled with an interest in the land. It is otherwise with a judgment, which is a mere *lien* or authority. The error in the Judge's charge arose from his supposing this like a case under our registry acts, where, if a party neglect to record his mortgage, or his deed, a subsequent purchaser takes preference. But these acts have no sort of application. The case remains as at common law, where the purchaser must abide the defect in his title. The maxim, *caveat emptor,* applies. The Court will not extend the registry acts by construction. The purchaser at a Sheriff's sale bids at his peril. The contrary rule would be to say, that on all judgments not satisfied of record, a valid sale may be made. Suppose a judgment paid, but not satisfied of record, is assigned—is it not equally reasonable that the assignee should be protected? Yet it is settled, that he takes, subject to all the equities existing against the original creditor.

This is not a judicial sale. To make a sale, properly speaking, a judicial one, the judgment must itself contain an order for the sale, like a decree in chancery for a sale of mortgaged premises, or an order of sale under our act for

the partition of lands. In such a case the whole matter is *res judicata*; yet even in these cases, a sale would not be conclusive against one who was no party to the proceeding. In the present case the sale is a mere ministerial act. Nor would the rule, that an unpaid judgment is no authority for a sale, affect that class of cases, which hold that irregularity in the sale, (as omitting to advertise or file a certificate) shall not defeat it. As to the forms of proceeding, the statute is merely directory. But, on payment, the Sheriff's authority is at an end. It no longer remains a question of regularity. A mere deviation from the form in which a sale upon execution is to be conducted by the Sheriff, would probably render the sale void, had it not been for an express statute provision to the contrary.(e) In *Hildreth* v. *Thompson*,(f) an *habere facias seisinam*, issued after the death of the tenant in dower, was holden void, and that the levy under it passed no title. And in *King* v. *Goodwin*,(g) it was holden that a *pluries* execution, issued after the judgment debtor had been committed, on an *alias*, was void; and an extent upon land of the debtor, he having been first liberated by the creditor, conveyed no title. Suppose, after this sale, a junior judgment creditor had sold, would he not have a right, as against all the world, to shew payment? Does not payment let in the junior *lien*? And is not the owner's case yet stronger? Suppose now an older judgment should appear, which had been paid, could not *Cadwell* defend himself against a sale under it, if the judgment under which he purchased had been a subsisting one?(h) In *Freeman* v. *Ruston*,(i) it was held that a sale of lands upon a *venditioni exponas*, issued after the defendant had been in prison under a *ca. sa.* upon the same judgment, would be void; because the imprisonment upon the *ca. sa.* extinguished the *lien*. And it is the settled law, that where the person of a debtor is in execution upon one judgment, and his land is sold upon a junior judgment, the latter will take preference of the first. The judgment is completely extinguished at the common law, and cannot be revived except by statute.

This question of payment may be tried in an action of ejectment. In *Earl of Stamford* v. *Nedham*,(j) it was hold-

*Margin notes:*

ALBANY,
Feb. 1824.

JACKSON
v.
CADWELL.

(e) 1 R. L. 505. *Vid. id.* 506.
(f) 16 *Mass.* *Rep.* 191.
(g) *id.* 63.

(h) *Vid. My-* *ers* v. *Kelsey,* 19 *John.* 197. *Keen* v. *Swaine,* 3 *Yeates' Rep.* 561.
(i) 4 *Dall.* 214

(j) 1 *Lev.* 160.

en that an irregularity of the Sheriff, in executing an *elegit* might be shewn in ejectment. This must have proceeded on the ground that he is a mere ministerial officer. Take a case under the late statute in relation to sales upon execution. Suppose a debtor redeems within the year; would not a subsequent deed to the purchaser be void? A prosecution of this action is our only remedy. We have none by *audita querela*, which does not lie to set aside the sale, but the execution only. This we wish to retain for the purpose of having it returned satisfied. In *England*, on the writ of *liberate*, founded on an extent, the tenant enters as tenant of record: but in this state there is no judicial step accompanying the execution. In *England*, too, where the defendant's lands are extended, and the judgment is afterwards paid, he may have his remedy by writ of *scire facias ad rehabendam terram.*(k) Even a *bona fide* grantee of tenant by *elegit* cannot hold after payment. By the rule contended for, on the other side, a release would not prevail against the judgment. No discharge will do, except a record one. Nor let it be objected, that we should have sought relief by motion to set aside the sale. This is not the remedy contemplated by the law. It means an action. The Court have no power over *Cadwell* upon motion. There are no means of bringing him into Court to answer. A motion is confined to the parties on the record, who have come in upon process, or to the officers of the Court. You have power neither to bring in additional parties upon motion, nor to compel the examination of witnesses. You, therefore, have no control over *Russel Clark*, or, if otherwise, you could not divest *Cadwell's* right. But, in truth, the title continued all along in *E. C. Saunders*, the lessor of the plaintiff; nothing was divested by the sale; and we have our common law remedy by action of ejectment. In the case, *Ex parte Jackson*,(l) Lord *Eldon* refused to supersede a commission of bankruptcy, because it might affect the title of *bona fide* purchasers. This shows that at common law, where the defendant's rights are, the purchaser must, at his peril, look to all the defects in his title. If a link is gone, the title is gone with it. This rule gave rise to our registry acts.

(k) *Bac. Abr Execution (B)* 7. and *Vid.* 4 *Rep.* 67, *Fulwood's case.* 2 *Inst.* 396. *F. N. B.* 104.

(l) 8 *Ves.* 533.

But *Cadwell* was not a *bona fide* purchaser. He had no-
tice of the lessor's claim, and took an indemnity against it.
The information which he obtained, was enough to put him
on inquiry, and he is consequently chargeable with no-
tice.(*m*)

Again : *R. Clark*, being a party to the judgment, cannot (*m*) *Hiern* v.
be considered a *bona fide* purchaser; and the defendant, *Mill*, 13 *Ves.*
coming in under him, is no more, whether he had sufficient 120.
notice or not.

*Mary Saunders* was a competent witness. She was a
mere trustee for *Edward C. Saunders, jun.* This question
depends on the effect of the paper dated the 22*d Oct.* 1816.
That paper carries no estate. It is a mere testamentary dis-
position, as is evident from the word *bequeath*, which is used
in it. It was evidently intended as a will, and can have no
effect till the death of the devisor. Such a paper does not
come within the rule making certain instruments operative
for one purpose, though they will not enure to another.

*G. C. Bronson*, for the defendant, stated the following
points :

1. No exception was taken to the opinion of his Honor,
the Judge, excluding *Mary Saunders* as an incompetent
witness.

2. She was properly rejected as an incompetent wit-
ness.

3. The defendant was a *bona fide* purchaser, for a
valuable consideration, without notice of any title in the
lessors of the plaintiff, or of any irregularity in the Sher-
iff's sale.

4. The under-lease from *Clark Saunders* to *Edward C.
Saunders*, was fraudulent and void as against creditors and
subsequent *bona fide* purchasers, and was so found by the
jury ; and the defendant could not be affected by notice of
such fraudulent conveyance.

5. The evidence to show an irregularity in the Sheriff's
deed, was objected to by the defendant, and improperly ad-
mitted by his Honor, the Judge.

6. *Russel Clark & Co.* had a good title to the premises in
question, at the time of the conveyance to the defendant,

ALBANY,
Feb. 1824.

JACKSON
v.
CADWELL.

And if the defendant failed in shewing a good title in himself, he shewed an out-standing title in *R. Clark & Co.* under whom he was in possession.

7. If the plaintiff shewed any title out of the defendant, and those under whom he holds, it was in *Mary Saunders,* who was not made a lessor of the plaintiff.

He said, that *Mary Saunders* took a trust estate under the conveyance of the 22d *October,* 1816, and was interested to testify in support of it. The Court will effectuate the intent of the parties if possible. The instrument contains the usual operative words of an assignment, and the subject conveyed, is *all the right, title and interest* of the assignor. This lease is to remain in the hands of the mother till the child arrives at 21 years of age, and then to pass over to the latter. As a devise, therefore, it would be nonsense ; for the grand-father may live to that time, in which event, it was clearly intended that the title should vest absolutely in the child. The parties intended that it should operate *in præsenti,* as a trust estate. Technical words are not necessary in an assignment.(*k*) At any rate, it will operate as a covenant to stand seised, the consideration whereof may be blood or marriage ; and it is enough that either of these exist. The deed need not express the consideration.(*l*) An estate vested in *Mary Saunders* during the minority of the son. She was the wife of the covenantor's son ; and a covenant to stand seised to her use, would be valid upon the consideration of blood between her husband and the covenantor.(*m*) It may be said that here was no interest, because the parent is, at all events, bound to support the child, without a right of resort to the fund ; and *Hughes* v. *Hughes,*(*n*) will probably be relied upon ; but this is not the case where the parent is of sufficient ability, as appears by that very authority ; and in this point of view, whether *Mary* had a legal estate or not, she was interested. Besides, the fund is expressly pointed out for the son's maintenance ; and, at any rate, she would be entitled to relief from this fund, if her husband should prove unable to maintain the child himself. The general rule as to the interest which shall exclude a witness, will be found in 1 *Phil. Ev.*

(*k*) *Cruise's Dig. Deed, ch. 9, s. 18.*

(*l*) *Jackson v. Sebring,* 16 *John.* 528. *Bedell's case,* 7 *Rep.* 40. *Cruise's Dig. Deed, ch. 12, s. 16, S. C.*

(*m*) *Sharrington v. Strotton, Plowd.* 300. *Bould v. Winston,* 2 *Roll. Abr.* 786. *Cruise's Dig. Deed, ch. 12, s. 13 & 14.*

(*n*) 1 *Br. Ch. Rep.* 387.

*last ed.* 43. *Bul. N. P.* 284. 1 *Gilb. Ev. by Lofft.* 225.
*Marquand* v. *Webb,* 16 *John.* 89. In the last case, the interest of the witness was not more certain than in the present one. As to the obligation of the parent to maintain the child, where there is other provision for his maintenance, I refer to 1 *Madd. Ch.* 272.

ALBANY,
Feb. 1824.

JACKSON
v.
CADWELL.

Here was no such notice as to take from *Cadwell* the character of a *bona fide* purchaser. The indemnity spoken of by the witness, does not imply that he suspected the title. It was no more than a warranty in a deed. The conversation was with a third person, and the nature or extent of the claim was not mentioned. It was, at most, a mere claim of title. To affect a purchaser, the notice should be clear and undoubted.(o) However *R. Clark* may have been affected with notice, *Cadwell,* the purchaser from him, cannot be affected by notice except to himself. To this point the authorities speak a uniform language. The following are some of them : *Jackson* v. *Bartlet and others,* (10 *John.* 185.) *Jackson* v. *Humphrey,* (8 *id.* 137.) *Jackson* v. *Walsh,* (14 *id.* 407.) *Demarest* v. *Wynkoop,* (3 *John. Ch. Rep.* 147.) *Bumpus* v. *Platner,* (1 *id.* 219. *Rob. on Fraud. Conv.* 495.

(o) *Jackson* v. *Humphrey,* 8 *John.* 137. *Meghan* v. *Mills,* 9 *John.* 64.

The jury have found that the lease from *Clark Saunders* to his father was void as against creditors. This question was material ; for the judgment against the two *Saunders* was subsequent to this lease. Notice of a fraudulent conveyance will not affect the purchaser.(p) The law is, in this respect, the same both as to the 13th and 27th Eliz.(q)

Cadwell being a *bona fide* purchaser, the Judge was right in withholding the evidence of payment from the jury. The question of notice went to the jury, and they found against it.

(p) *Rob. on Fraud. Conv.* 16, 17, 35 *to* 39. *Gooch's Case,* 5 Co. 60 *a. Chapman* v. *Emery, Cowp.* 280. *Doe* v. *Routledge, id.* 711. *Sterry* v. *Arden,* 1 *John. Ch. Rep.* 268.

We are not bound to furnish the plaintiff with a remedy against this execution. It is enough that this is not the proper remedy. The payment cannot be tried in this form. The defendants, in the execution, were fully advised of the sale ; but no step was taken to prevent it. They slept till the purchase and assignment. They ought to have proceeded by injunction, *audita querela,* or by order to stay the

(q) *Rob. on Fraud. Conv.,* 395 *Anderson* v. *Roberts,* 18 *John.* 516.

ALBANY,
Feb. 1824.

JACKSON
v.
CADWELL.

(r) Jackson
v. Bartlet, 8
John. 361.
(s) 13 John.
97.

(t) 17 John
167.

(1) Prigg
v. Adams, 1
Salk. 674.
(u) Jeanes
v. Wilkins, 1
Ves. 195.

(v) Rey-
nolds v. Corp
& Douglass, 3
Coines' Rep.
267.
(w) 5 Taunt.
429.

proceedings, and a motion to this Court. The regularity of an execution and sale cannot be questioned in ejectment.(r) This is well settled as to sales upon execution, which has issued after the year and day, without a *scire facias*, (13 *John.* 102, 4 *Campb.* 58.) In *Jackson* v. *Rosevelt*,(s) it was decided that neither error nor irregularity in the judgment will defeat a sale under it to a *bona fide* purchaser. In that case, too, the question whether the Sheriff had levied was not suffered to be raised. And in *Jackson* v. *Vanderheyden*,(t) which was ejectment for lands, grounded on the Sheriff's deed, the Court refused to admit evidence that the levy had been abandoned, and recognized the distinction for which we contend here, that the party should have moved to set aside the sale. An *audita querela* would have lain. (*Com. Dig. audita querela*, (*A*) (*B*) (*C*) 2 *Saund.* 148 *b. n.* (1) 1 *Salk.* 264.) And the 3 *Bl. Com.* 405, mentions payment of a judgment as the proper case for an *audita querela.* The Court will stay proceedings to enable the party to try the question of payment upon an *audita querela.* (*Wardel* v. *Eden*, 2 *John. Cas.* 258.) The remedy by motion is generally proper wherever an *audita querela* will lie. (*Bacon* v. *Judges of Ulster*, 4 *John. Rep.* 191. 2 *Saund.* 148 *c.* 3 *Bl. Com.* 406.) To shew how extensively an *audita querela* applies, I cite *F. N. B.* 104 & 105, (F.) 3 *Rep.* 44, *Boydon's case.* id. 52, *Ridgeway's case.* 5 *id.* 87, *Blumfield's case.* *Co. Lit.* 290 *b.*

The party cannot question a judgment in a collateral action, even where it is declared void by an act of parliament.(1) Wherever the execution will justify the Sheriff, he may convey a good title.(u) And where it is irregular, the Court will, many times, impose terms upon the party (as that he shall not bring an action) before they will set it aside ; and an action will not lie for the irregularity till it be set aside.(v) In *Graves* v. *Eades*,(w) the Court required the party to stipulate not to bring an action, before they would set aside the execution, on the ground that the judgment had been paid. The doctrine of *lien* becomes important only as between different judgment creditors. It confers no authority, but the power to sell is derived from the exe-

cution. The case of *Jackson* v. *Clark*,(x) is the only authority cited against us which bears upon the point ; but that was a statute proceeding to sell land for taxes. There was no judgment nor execution, nor was there, of course, any remedy by *audita querela* or motion. That case is like *Bigelow* v. *Stearns*,(y) where the judgment of an inferior court was holden void, for want of jurisdiction. *Woodworth*, J. says, that " the sale was made in consequence of a return that the whole of lot No. 6 was chargeable with the tax. This was a mistake of the assessors ; *for that part of the lot, including the premises,* had been assessed separately, and the taxes paid."

*Talcott,* (Attorney General) in reply. The estate in the premises in question was for three lives ; it was a freehold ; and the deed from *E. C. Saunders* did not convey the legal estate to *Mary Saunders.* There is no consideration mentioned in this conveyance as moving from her, and it is said none is necessary ; but *Cruise's Dig.* cited to this point, relates merely to an assignment of an estate for years. A freehold might pass by livery of seisin ;(z) but here is no livery, and the deed cannot operate as a common law conveyance. If at all, it must operate under the statute of uses as a bargain and sale, or a covenant to stand seised. The first requires for its aliment a pecuniary consideration ;(a) the last, blood or marriage.(b) The consideration must be the same to enable *Mary Saunders* to take as trustee ; but she has none of the blood of *E. C. Saunders.* It is said she is the wife of his son ; and a covenant to stand seised to the use of the son and his wife is good(c); and *Sharington* v. *Strotton,*(d) is to this effect. This case goes upon a union both of blood and marriage ; but admitting that either will do separately, *Mary* is not named as the wife in the deed. This is necessary.(e) The relation by blood or marriage should appear on the face of the instrument.(f)

Again, the instrument purports to be a grant, *in præsenti,* of all *E. C. Saunders'* estate. And the provision that the mother should hold is inconsistent and void. But this objection that the estate is out of the lessors is now heard for the first time. It should have been made upon the trial, to

ALBANY,
Feb. 1803.

JACKSON
v.
CADWELL.

(x) 18 *John.* 441.
(y) 19 *John.* 39.

(z) *Cruise's Dig.* Deed, ch. 6, *s.* 7 *to* 31, 1 *Inst.* 48 *a.*

(a) *Jackson* v. *Alexander,* 8 *John. Rep.* 488.
(b) *Jackson* v. *Sebring,* 16 *id.* 528.

(c) *Bould* v. *Winston, Cro. Jac.* 166.
(d) *Plowd.* 298.
(e) *Sand. on uses,* 436-7. *Bedell's case,* 7 *Co.* 133.
(f) *Vin. Abr. uses.* (Z a) *pl.* 8.

ALBANY,
Feb. 1824.

JACKSON
v.
CADWELL.

warrant its being urged here.(g)    Had it been made there, it might have been answered by shewing a conveyance to E. C. Saunders, junior, the cestuy que trust.

*Mary Saunders* was a competent witness.    She was rejected on the ground that the interest conveyed was for the support of her infant son.    If this was a testamentary disposition, she was, of course, not interested.    That it was so, I refer to *Rob. on Wills*, 73.    *Pow. on Dev.* 9, 10, ed. 1822.    2 *Ves. Jun.* 208.    4 *id.* 565.    If it is to be deemed a covenant, the use remained in the covenantor, until the minor came to the age of 21,(h) when the interest of the parents would cease ; for they would no longer be bound to maintain the child.    But if the trust was available to the infant, this can make no difference ; for the parents would still be bound to support him, from their own funds.(i)    It is said this case is an exception to that rule, the property being expressly devoted to the child's support ; but the authority cited does not bear out the position ; and other authorities are against it.(j)    The case of *Mundy* v. *Howe*, (4 *Br. Ch. cas.* 224,) shews upon what principles the Court of Chancery will qualify the rule.    The Court are also referred to *Brodie* v. *Barry*, (2 *Ves. & Bea.* 36.)    Then she must be excluded, if at all, upon her contingent interest, that her husband may apply for support ; but nothing appears that the contingency has happened.

(g) *Graham* v. *Cammann*, 2 *Caines' Rep.* 168.    *Frier* v. *Jackson*, 8 *John. Rep.* 507.    *Pike* v. *Evans*, 15. *John.* 210.

(h) *Vin. Abr. (Y. a.)pl.* 13.    *Doe* v. *Whittingham*, 4 *Taunt.* 20.

(i) *Darley* v. *Darley*, 3 *Atk.* 399.    1 *Ves.* 160.    *Billingsly* v. *Cricket*, 1 *Br. Ch. Cas.* 268.    *Dawes* v. *Howard*, 4 *Mass. Rep.* 97.

(j) *Andrews* v. *Partington*, 3 *Br. Ch. Rep.* 60.

The title of a purchaser at Sheriff's sale depends upon the judgment.    This is an essential part of the evidence in ejectment by him.(k)    Both the judgment and execution must be valid and subsisting.(l)    The cases cited on the other side, relating to the effect of setting aside a judgment after the sale for irregularity or error, or which shew that a Sheriff's deed cannot be contradicted, or that a third person cannot object the want of a *scire facias*, all go upon principles peculiar to the cases themselves, and do not apply here.    *Jeanes* v. *Wilkins*, (1 *Ves. Sen.* 195,) is the strongest case against us ; but it is not law.    I deny, on the authority of *Jackson* v. *Morse*, (18 *John.* 441,) that the Sheriff can always convey a good title, where the process will justify him.    Payment satisfies the judgment ; this may be inquired into

(k) *Jackson* v. *Hasbrouck*, 12 *John.* 213.

(l) *Cliver* v. *Applegate*, *South. Rep.* 479.

in a collateral action; and proof of payment will defeat a sale under it. In *Woodcock* v. *Bennet*, (*Court of Errors, April,* 1823,) an execution issued after the death of one of the defendants, without the judgment being revived by *scire facias*, was holden void, and that it conferred no title upon the purchaser of lands which had been sold under it. That was the case of a *bona fide* purchaser; and the question came up collaterally upon a bill filed to compel *Woodcock*, the purchaser, to make a title to *Bennet*, pursuant to articles by which *W.* had covenanted to convey. What difference is there between a paid judgment, and one wanting parties? In *Jackson* v. *Sternburgh*,(*m*) *Lansing*, Ch. J. presupposes that if the judgment had been satisfied the sale would have been void. In *Jackson* v. *Robins*,(*n*) the Chancellor takes the ground that the judgment had not been paid, and holds the sale valid. In *Jackson* v. *Bartlet*, the Court presupposed that had the defendant before been discharged from a *ca. sa.* by the plaintiff's consent, it would have satisfied the judgment; and that a sale under a *fi. fa.* subsequently issued, would have been void; but they refused evidence of the discharge, because it was by the consent of the attorney, who had no authority to consent. In *Sherman* v. *Boyce*,(*o*) the judgment was holden to be extinguished by the payment, the execution gone, and the officer *functus officio*. In *King* v. *Goodwin*,(*p*) it was holden, that a *pluries* execution, issued after the judgment debtor had been committed on an *alias*, was void; and an extent upon land of the debtor, he having been first liberated by the creditor, conveyed no title: and in *Hammatt* v. *Wyman*,(*q*) the Court declared that payment extinguished the judgment, that the execution was *functus officio*, and could convey no title. The act concerning judgments and executions,(*r*) provides a remedy for a *bona fide* purchaser of lands upon execution, who shall be evicted by reason of any irregularity in the proceedings. The case of *King* v. *Goodwin*,(*s*) is in point. It was entry *sur disseisin*, for lands extended upon an execution, issued on a satisfied judgment, and the execution was holden void. The same principle applies to ejectment for lands sold on a *fi. fa.* In *Foster* v. *Jackson*,(*t*) it is said

ALBANY, Feb. 1824.

JACKSON
v.
CADWELL.

(*m*) 1 John. Cas. 154.

(*n*) 16 John. 571.

(*o*) 15 John. 443.

(*p*) 16 Mass. Rep. 63.

(*q*) 9 Mass. Rep. 142.

(*r*) 1 R. L. 504, s. 11.

(*s*) *Supra.*

(*t*) Hob. 58.

ALBANY,
Feb. 1824.

JACKSON
v.
CADWELL.

(u) Good-
yere v. Ince,
Cro. Jac. 246.
Yelv. 179, S. C.
by name of
Goodyer v.
Junce. 1
Brownl. 107,
S. P.
(v) 2 Caines'
Rep. 61.

(w) Roberts
v. Anderson,
3 John. Ch.
Rep. 378.

(x) Jackson
v. Hayner, 12
John. 469.

(y) Ander-
son v. Van Al-
len, 12 John.
345. Green v.
Slayter, 4
John. Ch. Rep.
38.
(z) Chester-
man, v. Gard-
ner, 5 John.
Ch. Rep. 33.
Daniels v. Da-
vison, 16 Ves.
249.

(a) Jackson
v. Wood, 12
John. 73.
(b) 1 Sch.
& Lef. 90.

that an *elegit* is, in effect, but a *fi. fa.* And this is plain from the nature of the proceedings upon an *elegit* as they are pointed out in *Tidd*, 941. True, there is a difference made, in some cases, between a purchase by the party, and a stranger. In the former case, where the judgment is set aside, on error, the purchase is void—in the latter it shall remain good.(u) The same distinction is taken in relation to an irregular execution, in *Simonds* v. *Catlin*.(v) Here the purchase was by the party, and we deny that the purchaser from him takes any better title than his grantor : both depend on the goodness or badness of the execution. This is not like sales under the registry acts, or the statute against fraudulent conveyances. In the latter act, the proviso in favour of *bona fide* purchasers saves the second one.(w) There is no proviso for this case, and *Cadwell* can take no better title than *Clark* had to give him. This is, like any other deed, void at the common law, as a deed obtained by fraud from an illiterate man,(x) which can never be made valid by a conveyance from a fraudulent to a *bona fide* grantee. *Roberts on Fraud. Con.* 382-3, illustrates this distinction. In all cases of a sale under a power, the grantee purchases at his peril. If the power fails the title goes with it.

But whether the deed from *Clark* to *Cadwell* would have been good, without notice to the latter, or not, is immaterial, for he had notice. The conversation with *Hale* was enough to put him on inquiry.(y) and the possession of *E. C. Saunders* continued up to the moment of the grant,(z) either of which amount to legal notice.

As to the distinction between a remedy to avoid the sale by *audita querela*, and by *assize*, the Court are referred to. *Vin.* (A) 1, 2, 4, 11 ; *Waddington* v. *Vredenburgh*, 2 John. *Cas.* 229 ; *Com. Dig. audita querela*, (C) *last paragraph.* An *audita querela* must be by the party, and will not lie after the sale.

There is no doubt that the exception is valid, and to avoid its effect we are told that *Clark Saunders* has released the estate to *R. Clark*. To this we answer, that the release was not under seal, and will not pass a freehold.(a) This estate for lives is a freehold interest.(b) The release not

passing an estate, *R. Clark* cannot claim, as a *bona fide* purchaser, within the statue, *27th Eliz.* He is not a *purchaser* of the fraudulent grantor. This is necessary, where the party claims under that statute,(c) and to avoid a deed, as fraudulent, in respect to creditors, the party must claim under a valid judgment, due at the time of the sale. (Vid. *Drinkwater* v. *Drinkwater*, 4 *Mass. Rep.* 357, per *Parsons, Ch. J. Hider* v. *Dorrel*, 1 *Taunt.* 381-2, per *Mansfield, Ch. J. Rob. on Fraud. Con.* 489-90. *Sanders* v. ———, *Holt. Rep.* 327, per *Holt, Ch. J. Skin.* 586, S. C.)

WOODWORTH, J. If the question had been submitted to the jury, whether the judgments were paid, I think the plaintiff would have failed on that ground. The evidence does not satisfactorily establish the fact of payment. The Judge, at the trial, being of opinion that this inquiry was immaterial, decided that the title of the defendant could not be affected, he being a *bona fide* purchaser, without notice. The only question submitted to the jury was, whether the conveyance from *Clark Saunders* to *Edward C. Saunders*, was fraudulent. The exception is taken to the charge, but not to the opinion of the Judge, excluding *Mary Saunders*, as an incompetent witness.

The rule laid down in *Frier* v. *Jackson*, (8 *John.* 507) is, that a bill of exceptions does not draw the whole matter into examination, but only on the points to which it was taken; and that the party excepting must lay his finger on those points which might arise, either, in admitting or denying evidence, or in matter of law arising from a fact not denied, in which either party was overruled by the Court.

The plaintiff made out a title in *Edward C. Saunders*, which entitles him to recover, unless that title was divested by the sale under the judgments. The conveyance to *Edward C. Saunders, jun.* cannot operate as a bargain and sale, for want of a pecuniary consideration. If it operates at all, it must be by way of covenant to stand seised to uses. That species of conveyance is good, when made upon the consideration of blood or marriage. In such case the statute of uses transfers the title to the use appointed. If the parties be of

ALBANY,
Feb. 1824.

JACKSON
v.
CADWELL.

(c) *Jackson* v. *Ham*, 15 *John.* 263, per *Spencer, J.*

one blood, the law implies a good consideration, arising from natural love and affection. In this case the conveyance provides, that the lease shall remain in the hands of *Mary Saunders,* for the use, benefit and support of her son, *Edward,* until he arrives at the age of 21, at which time he is to come into possession of the lease. If it be admitted that *Mary Saunders* is to be considered as a grantee, upon trust, for *Edward C. Saunders, jun.* there is no tie of blood between the grantor and grantee. The deed, therefore, must fail, as a covenant, to stand seised.

The cases on this subject are ably examined in *Jackson* v. *Sebring,* (16 *John.* 515.) The words used in the instrument, although in the form of a deed, would seem to denote an intention to devise. There are many cases where a writing, in this form, has been proved as a will. (4 *Ves. Junr.* 565.) On this supposition, the result is the same as to the present interest of *Saunders,* the elder. It follows, then, that *Mary Saunders* had no interest in the premises, and ought to have been received as a witness.

The question to be decided is, whether a title can be acquired under an execution issued on a judgment that has been paid. It is certain that the judgment is no *lien,* after payment which is matter *in pais* and may be established by parol testimony.

In *Sherman* v. *Boyce,* (15 *John.* 443) the defendant, as Deputy Sheriff, sold the plaintiff's personal property on an execution, after the same had been paid. The Court say, " the debt must be deemed satisfied as to the judgment creditor ; and that fact being established, the law, founded on wise policy, considers the officer as *functus officio.* The direct and sole object of the *fi. fa.* was to raise the money to satisfy the judgment creditor. That object being attained, the power conferred by the writ is spent." So, also, in *Carter* v. *Simpson,* (7 *John.* 535) the same doctrine is recognized. The plaintiff, in that case, was a purchaser of some hay, at a constable's sale, on execution. The defendant contended, that it was necessary to prove the execution and judgment. It was held, that the plaintiff was bound to prove the athority under which the constable acted. It was observed, that

" If the constable had no authority to sell the hay, the vendee had no title."

It is well settled that a vendee, under a lawful judgment and execution, shall not lose his property upon a reversal of the judgment by writ of error. But no case admits a title in the purchaser, when the Sheriff acted without authority. (*Manning's case,* 8 *Coke,* 96.) Whatever may be the rights of a *bona fide* purchaser, without notice, it must be conceded, that as between the parties, the judgment and execution are extinguished by payment. Consequently, *Russel Clark,* a plaintiff in one of the executions, who paid to the Sheriff the amount of the other, and afterwards assumed the control of it, can never set up his purchase as making out a title.

The action of ejectment, on the demise of *Clark* and his partners, against *Edward C. Saunders,* might have been successfully resisted, by proving payment of the judgments and executions under which the premises were sold ; but the objection not being taken in that suit, *Saunders* was dispossessed on the 7*th* of *May,* 1820. The next day the defendant entered, claiming title under *Clark.* He proved an assignment of the original lease to him, dated *May* 8, 1820, for the alleged consideration of $700, but there is no proof that any thing was paid, or secured to be paid. *Hale,* a witness, testified, that in a conversation with the defendant, the day before he purchased, it was mentioned that *Edward C. Saunders* laid some claim to the premises, but upon what it was founded nothing was said. The defendant afterwards informed the witness, that when he purchased, the company indemnified him.

Enough has not been shown, to entitle the defendant to the character of a *bona fide* purchaser, for a valuable consideration, without notice. It is, therefore, not necessary to discuss the more difficult question, whether a *bona fide* purchaser can be affected by payment of the judgments. Admitting he cannot, the present defendant can derive no benefit, his title being no better than that of the purchasers at the Sheriff's sale. It is not sufficient to shew merely a good conveyance in form—payment of the consideration must be made out. It must be actually paid, not merely secured to

be paid, for otherwise the purchaser would not be hurt. This doctrine is well settled in the books. (3 *Atk.* 304. 3 *P. Wm.* 307. 1 *Atk.* 538. 2 *Atk.* 630. 2 *Mad.* 255.) Besides, it is here stated that the defendant is indemnified, and if so, cannot incur loss, whatever may be our decision. The defence of a purchaser for valuable consideration, is generally confined to a Court of Equity, and may be resorted to when the defendant has as good a claim to the protection of a Court of Equity, to defend his possession, as the plaintiff has to the assistance of the Court, to assert his right. In such case, the Court will not interfere on either side. It can never be made use of as a substantive ground of Equity, for offensive operations by a plaintiff. It is not ground for relief, though it is a good defence. (16 *John.* 544. *Ambler*, 292.)

The defendant not having shewn that he is a subsequent *bona fide* purchaser, must stand on the same ground as if *Clark*, the purchaser from the Sheriff, had never conveyed.

On the question of notice, I think a knowledge that *Saunders* had a claim, was enough to put the party on inquiry. Presumptive notice is where the law imputes to a purchaser the knowledge of a fact, of which the exercise of common prudence and ordinary diligence must have apprized him. (*New. on Con.* 511, *and the cases there cited.*)

The conveyance from *Clark Saunders* to his father was undoubtedly fraudulent as to creditors, and subsequent *bona fide* purchasers ; but as between the parties it was valid. It is not drawn in question by a creditor having a judgment, or standing in a situation to contest the fraud, or a subsequent *bona fide* purchaser. The judgments being paid, the direction to the Sheriff to sell, and the purchase of the premises by *Russel Clark*, were fraudulent acts, and cannot give him a right to question the conveyance between *Clark Saunders* and his father. This was an immaterial question, submitted to the jury. I am of opinion, that the exception was well taken, and consequently that a new trial be granted, with costs to abide the event.

SUTHERLAND, J. concurred.

SAVAGE, Ch. J. If the lease from *Clark Saunders*, to *Edward C. Saunders*, and from him to *E. C. Saunders, jun.* are valid, then *Mary Saunders* was an incompetent witness. The express object of the conveyance was, to place in her hands a fund for the support of her son. She would, therefore, be relieved as far as the fund extended, from an obligation, which would otherwise be binding upon her. The lease, then, is for her benefit, and that of her husband, as parents of *Edward C. Saunders, jun.* The instrument, however, cannot operate as a bargain and sale, for want of a pecuniary consideration ; nor as a covenant to stand seised, as there is no relation of blood between the grantor and *Mary Saunders*, nor by way of assignment for want of livery of seisin, the estate attempted to be conveyed being a freehold.

The abstract question, whether a sale by a Sheriff upon an execution which has been paid, is valid, is one of some difficulty. On the one hand, debtors should be protected from a sacrifice of their property, after payment of their debts ; and on the other, innocent purchasers, who have parted with their money on the faith of a sale, by virtue of legal process, regular upon its face, and supported by a regular judgment, ought to be protected in their purchases.

In *Sherman* v. *Boyce*, (15 *John.* 446,) *Platt*, Justice, in delivering the opinion of the Court, lays down the law in substance, that payment of the money unconditionally to the plaintiff is a satisfaction of the debt ; and, therefore, the officer holding the *fi. fa.* becomes *functus officio*—the process having attained its object by payment and satisfaction of the judgment, the power conferred by it is spent.

In *Jeanes* v. *Wilkins*, (1 *Ves. Sen.* 195,) Lord Ch. *Hardwicke* says, " To avoid the sale and title of the defendant, it must be proved that the *fi. fa.* was void, and conveyed no authority to the Sheriff ; for it might be irregular, and yet if sufficient to indemnify the Sheriff, so that he might justify in an action of trespass, he might convey a good title, notwithstanding the writ might be afterwards set aside."

This doctrine was fully discussed in the case of *Woodcock* v. *Bennet*, in the Court of Errors, in *April* last, by *Wood-*

*worth,* Justice, in delivering his opinion, which was unanimously concurred in by the Court.

It may, therefore, be considered settled law, that a *bona fide* purchaser, at a Sheriff's sale, acquires a valid title as against the defendant in the execution, unless it is not only *voidable,* but absolutely *void.*

The same reasons of policy which secure to an innocent purchaser a valid title, do not exist where the judgment creditor becomes the purchaser ; and it would be the height of injustice to allow the party, guilty of the irregularity, to take advantage of it. The case of *Hewson* v. *Deygert,* (8 *John.* 333,) contains nothing contrary to this principle. In that case the Court decided, that land could not be sold a second time, by virtue of the same judgment and execution, while in the hands of the purchaser at the first sale. And in *Jackson* v. *Benedict,* the question was, not whether there was any irregularity in issuing the execution, but whether the plaintiff had not lost his priority upon certain property of the defendant, and the title, in consequence thereof, was vested in another person.

In the cases last cited, the parties complaining of the effect of the executions, were *bona fide* purchasers, not parties to the executions, and possessing no other remedy than by defending the property they had purchased and paid for.

In the case now under consideration, the party, seeking to avail himself of the irregularity of the sale, was a defendant, who stood by and looked on while his property was sold by virtue of an execution, which had been paid, as he now alleges. No effort was made on his part to stay the proceedings, or set aside the sale, either by motion to the Court, or *audita querela.* Had the property been purchased by a third person, a stranger to the transaction between the parties to the execution, I should deny the plaintiff's right to recover.

The property passed into the hands of the defendant, who cannot, in my judgment, be considered a *bona fide* purchaser, as he purchased from the plaintiff in the execution, and notice is brought home to him. He knew that *Saunders* made some claim. This was sufficient to put him upon inquiry. It

must be presumed that he did enquire, as he took an indemnity against the claim.    The cases cited, of *Jackson* v. *Given & others*, (8 *John.* 137) and *Meghan* v. *Mills*, (9 *John.* 64,) are not so strong, nor have I found any case where facts like these are held insufficient notice.

The contest here is virtually between the original parties; and, as between them, I can see no objection to an inquiry into the regularity of the sale.    The evidence offered was not to contradict the Sheriff's deed, as in *Jackson* v. *Croy*, (12 *John.* 427) and *Jackson* v. *Van Der Heyden*, (17 *John.* 167) but to shew that the plaintiff in the execution proceeded to sell contrary to the rights of the defendants, and, in my opinion, it should have been received.

The question submitted to the jury was, whether the conveyance from *Clark Saunders* to *E. C. Saunders* was not fraudulent and void ; and the jury were warranted by the testimony in their verdict.

But still, if the judgment had been paid, the sale would have been void, as between the parties.    The evidence produced rather proved that no payment had been made; but, in my opinion, the Judge erred, in refusing to submit that testimony to the jury, and a new trial should be granted.

New trial granted.