Mr. Chief Justice ShaRkey
delivered the opinion of the court.
The facts of this case are extremely complex, and many of them immaterial, so far as the merits of the present controversy are concerned, it being but an appeal from a decision on a demurrer to the complainants’ bill. It seems that the appellees, as bodies corporate, obtained rightful possession, as it is alleged, of certain securities which had been given by one Govan as principal, and Binford as surety, for a lease of school lands, and being desirous to liquidate the same with the complainants, a proposition was made by Binford, that one Davis, who was the trustee of Govan, should convey to the complainants certain *784 lands which had been conveyed by Govan to Davis for that purpose. The proposition was made to appellant Morton, who was president of the board of trustees of the female academy, and with whom the notes had been deposited for safe keeping. Morton requested Binford to keep the matter secret, and he would see what could be done, and give him an answer. Some time afterwards, Morton took the notes from the place of deposit, and consummated a contract for the land, taking a deed in the name of a friend, who is also made a defendant to the bill, and delivering up the notes. This it seems was done without the knowledge or approbation of the complainants. After-wards, Morton proposed to purchase for complainants a house and lot in the town of Grenada, and obtained the consent of some of the members of the corporations, that the notes of Go-van and Binford should be appropriated in that way. He bought the house, but not with the notes, and took a quit-claim deed in the name of the complainants, but acquired no title, as the house was still bound for a part of the purchase-money. It seems that afterwards, the marshal sold the land which Morton had bought under executions, and that Fisher became the purchaser for a very small sum, and afterwards conveyed to Morton’s friend, and the object of the bill is to subject these lands to a lien for the amount of the notes, or to have them declared trust property. This general outline presents only the prominent facts. The bill contains allegations disclosing the several steps taken to consummate a design which it charges to have been fraudulent. The respondents demurred, and took an appeal from the decree of the vice-chancellor, disallowing the demurrer.
The counsel for appellants seemed to think that there could be no difficulty in reversing the judgment of the court below, except for the rule which requires an answer to a charge of fraud contained in a bill. To obviate this difficulty, it is assumed that the purchase of Fisher was not fraudulent, even if he purchased with notice, that the judgment under which the land was sold had been previously satisfied. The case of Van Campen v. Snyder, does not go to this extent. It only decides *785 that a bona fide purchaser under a judgment which has been satisfied, will be protected, if it does not appear that the judgment has been satisfied. This we need not now affirm or deny. The cases of Luddington v. Peck, 2 Conn. 702, and Jackson v. Caldwell, 1 Cow. 622, cited in Van Campen v. Snyder, only hold that an execution is not void, when it does not appear of record that the judgment has been paid, and that a bona fide purchaser under such execution will be protected. But one who purchases, knowing that the judgment has been satisfied, is not a bona fide purchaser. It is also argued that as Fisher’s purchase was not fraudulent, Morton, who holds under him, will be protected, although he*may have committed fraud in the original purchase from Govan’s trustee, and the case of Bumpus v. Platner, is relied on. That would be undoubtedly true as to any other person than Morton, and even notice to him it seems would make no difference; but he is said to be the perpetrator of a fraud in reference to this same land in his original purchase. It may be that no title passed fo Fisher by the marshal’s sale, and that Morton derived none from Fisher; and that the case must stand as though these sales had not taken place, and if that be so the case does not fall within the authority.
It is again argued that the complainants show no title to the notes, inasmuch as they belonged to the trustees of schools for the township in which the section that Govan purchased was situated, and could not be taken from them by the legislature, and vested in complainants. On an examination of the acts, this point is not so clear. The sixteenth section was certainly a trust property for the benefit of the whole township, and could not be diverted from that purpose. The question of power seems to have been in the mind of the legislature, and hence whilst the funds soon vested in the corporations, they were only vested, as the act declares, subject to all the laws in force in regard to school funds. The apparent effect then, was to substitute the corporations as trustees for the township, instead of those who had been appointed under the general law. We do not decide that the legislature had such power; perhaps it had not; but even if the effect of the act be doubtful, it places the *786 rights of complainants in a more favorable light than, that presented by counsel for the appellants. It must be conceded that the legislature had no power whatever to divert the fund from the use of the township, and if such be the effect of the act, it is so far inoperative.
It has been insisted that inasmuch as complainants have shown no right whatever on which it is possible for the court to found a decree for relief, the general rule that there must be an answer to an allegation of fraud, does not apply. There may be cases in which an allegation of fraud would not require an answer. Such an allegation is usually considered as giving the court jurisdiction, but other circumstances must also be taken into consideration ; the subject-matter must be such as the court can act upon ; but when it is palpable that the case made by the bill, aided by the discovery sought, is wholly without the pale of chancery cognizance, then there seems to be no use in an answer, as it avails nothing. But if the case is in any degree doubtful, the fraud should be answered, and this we apprehend was all that was intended to be asserted in the case referred to, as establishing the rule. But as this demurrer can only reach the defects in the bill, on the ground of a want of equity, it is safest to act on the rule that a demurrer for such cause will not be sustained, unless the court is satisfied that no discovery or proof called for properly by the bill, can make the subject-matter of the suit a proper case for equity cognizance. Bleeker v. Bingham, 3 Paige, 246. We cannot now say what may be the result of further progress in this suit. Perhaps it may disclose a meritorious case on the part of complainants. We only mean to decide that the case is not so entirely destitute of all apparent equity, as to justify a demurrer without a denial of the fraud. This is as far as we are required to go to justify an appearance of the decree disallowing the demurrer. We are asked to give a final decree on the merits for complainants, but this we cannot do on the state of case presented. The parties had leave to answer, and we think it proper that they should still be allowed that privilege.
Decree affirmed, and cause remanded for answer.