## LONG *et al.* v. BURNETT.

1. SPECIAL ADMINISTRATOR. Under the Revised Laws of 1843, the powers of a special administrator were limited to the preservation of personal property of the decedent until a regular administrator could be appointed; and an order of the Probate Court directing the sale of real estate by a special administrator was without authority of law and was void. The regularity of such an order and the proceedings thereunder may be collaterally impeached.

2. JURISDICTION OF PROBATE COURT. The jurisdiction of a probate court over the settlement of the estate of a deceased person attaches and becomes effective only upon the granting of letters of administration; and the power to make an order directing the sale of real estate for the payment of debts, arises only upon the presentation, by the legal and regular administrator, of the petition prescribed by law.

3. SAME. The presentation of such a petition by the administrator confers upon the court jurisdiction of the subject matter, and its subsequent proceedings will be presumed as regular and conclusive as those of courts of general jurisdiction. When the jurisdiction so far attaches as to require the court to hear and determine the sufficiency of the facts relied upon to confer such jurisdiction, whether they relate to the law, the process, the notice, or the petition, the action of the court will not be collaterally reviewed.

4. EVIDENCE : TAX DEEDS. Tax deeds regularly executed under the revenue law of 1841, are *prima facie* evidence of the regularity of all prior proceedings in the levy of the tax and the sale of the property.; and when such deed is attacked the burden of showing a failure to comply with the requirements of the law, in such proceedings, is upon the party making such attack. When, however, no record of the levy of the tax, or of the sale, is in existence, the burden is upon the party claiming under the deed.

5. RECITALS IN A DEED. The failure to recite one of the requisites to a valid levy of a tax in a deed in which all the proceedings had in such levy and all others essential to its validity are set out, is evidence, by implication, that the requirement omitted was not complied with.

6. CASE FOLLOWED. *Rayburn v. Kuhl et al.*, 10 Iowa, 92, as to tax deed, cited.

### Appeal from Cedar District Court.

### TUESDAY, APRIL 8.

THE material facts are presented in the opinion of the court.

*Grant & Smith* for the appellants.

I. The plaintiff would, under the statute of 1843, (see Revision 1843, p. 713, § 35,) which was unrepealed and in full force when the administrator's deed was recorded, be debarred from contesting our title. The Code of 1851, sec. 1508, has no application to sales made before it took effect. *Cooper* v. *Sunderland*, 3 Iowa, 114.

II. The jurisdiction of a court of limited jurisdiction being once established, it is entitled to the same presumption in favor of its acts as a court of superior and general jurisdiction ; and subsequent irregularities will not render

its proceedings void. *Little* v. *Sinnett*, 7 Iowa, 325 ; *Cooper* v. *Sunderland*, 3 Id. 125 ; *Morrow* v. *Weed*, 4 Id. 88 ; 1 Smith's L. C. (5th ed.) note 820, 848, and the authorities cited : *Lessee of Adams* v. *Jeffries*, 12 Ohio, 272 ; 2 Zab. 396 ; 1 Carter, 215 ; 1 Doug. 384 ; *Sheldon's Lessee* v. *Newton*, 3 Ohio S. 495 ; *Grignon's Lessees* v. *Astor et al.* 2 How. U. S. 319 ; 18 Ala. 176 ; 30 Maine, 97 ; 12 Conn. 491 ; 18 Id. 81 ; 11 S. & R. 422 ; Rev. Laws, 1843, p. 708, § 10.

III. It was for the court to decide upon the existence of facts which conferred jurisdiction, and its findings cannot be questioned in this collateral manner. *Grignon's Lessee* v. *Astor et al.*, 2 How. U. S. 342 ; *Thompson* v. *Tolmie*, 2 Peters, 165 ; Voorhies v. *The Bank of the United States*, 10 Id. 471 ; *Selim* v. *Snyder*, 7 S. & R. 166 ; *McPherson* v. *Cunliff*, 11 Id. 437 ; *Cowan* v. *The Turnpike Company*, 1 Conn. 1 ; *Gervis* v. *Brown*, 1 Nott & McCord, 329 ; *Scott* v. *Hancock*, 13 Mass. 162 ; *Mooer* v. *White*, 6 John. Ch. 384 ; *Wyman* v. *Campbell*, 6 Porter, 219 ; *Lessee of Goforth* v. *Longworth*, 4 Ohio, 129.

IV. The tax list or warrant, and the papers necessary to and relating to the collection of the taxes for Cedar county for the years 1841 and 1842, should be produced, if in existence, as the best evidence. *Slade* v. *The Governor*, 3 Dev. 364 ; but if lost, the loss may be established, and parol evidence introduced to supply it. Black. Tax Tit. 598. It is true, as a general rule, *no presumption* can be raised in behalf of the officers to cure any radical defect in their proceedings ; but it does not bind a third party who was not required to collect and preserve the necessary evidence. *Stead's Executors* v. *Course*, 4 Cranch, 403 ; *Colman* v. *Anderson*, 10 Mass. 105 ; *Gray* v. *Gardner*, 3 Mass. 399 ; Blackwell on Tax Titles, 613 ; *Freeman* v. *Thayer*, 33 Maine, 76 ; *Lessee of Ward* v. *Barrows*, 2 Ohio S. 241 ; 1 Greenl. Ev. 51 ; *Lessee of Winder* v. *Starling*, 7

Ohio, pt. 2, 190 (marg.) Acts done which presuppose the existence of others to make them legally operative, are presumptive proofs of the latter. *Bank of the United States* v. *Dandridge*, 12 Wheat. 70; *Williams* v. *East India Company*, 3 East, 192; *Kelly* v. *Connell*, 3 Dana, 532; *Wheelock* v. *Hall*, 3 N. H. 310; *Brown* v. *Connelly*, 5 Blackf. 390; *Hartwell* v. *Root*, 19 John. 345; *Jackson* v. *Shaffer*, 11 Id. 513.

*Richman & Bro.* for the appellee.

I. The duty of a special administrator consisted in collecting and preserving the personal estate for the administrator. He could not, under any circumstances, exercise control over the real estate. See Revised Stat. 1843, p. 677.

II. A petition must be presented by a regular administrator to confer upon the Probate Court jurisdiction. No presumptions arise in favor of the order of a court commanding a special administrator to do an unlawful thing. See the authorities cited to this point by appellant's counsel.

III. The absence of any record of the sale, and of evidence to show that any such records have ever been lost, not only destroys the *prima facie* character of the deed, but raises the presumption that the requirements of the law have not been complied with.

LOWE, J.—An action of right. On the trial before the court, the title and right of possession in the premises, were adjudged to be in plaintiffs. In seeking a revision of this judgment, the defendant insists that the court below committed an error in excluding from its consideration the evidence of his title to the land in controversy, consisting,

*First.* Of two deeds of conveyance, one from Benjamin S. Olds, special administrator, dated January 3d, 1846, to Amos E. Kimberly; the other from said Kimberly to the defendant, dated January 9th, 1850; both duly recorded,

and upon their face regularly executed. Their admissibility as evidence of title in the defendant, depends upon the question, whether the judge of probate, under the Revised Statutes of 1843, had the power and authority to license a special administrator to sell the land of a decedent to pay claims against the estate. The circumstances under which this had been done, are developed in the documentary and record evidence contained in the bill of exceptions accompanying the record in this case.

It seems that the plaintiffs are the devisees of Robert Long, who, in 1843, died seised in fee of the land in controversy, in the State of Ohio, making a will, but appointing no executor. Afterward, in 1844, the will was duly probated, and one Peter Igow, was appointed administrator, with the will annexed. Afterwards, Igow came to this state and applied to the judge of probate of Muscatine county for letters of administration, representing that there was personal property in said county belonging to the estate, and upon which the will operated. On account of some informality in the authentication of his papers, his application was refused.

But the judge of probate being advised that the property was in danger of being lost, unless it received immediate care, upon request appointed Benjamin S. Olds a special administrator, (as he had the power to do under the statute,) to take possession of and preserve the same, until a regular or general administrator could be appointed. To this extent were his duties as special administrator specified by his letters under which he was commissioned to act, and it is proper to remark, that the conditions of his bond were restricted to the same duties. Nevertheless, in November thereafter, (1845,) being unable to find or successfully to obtain any assets belonging to said estate, but having incurred certain expenses in attempting to do so, he petitioned the probate court to sell the land in controversy to

defray said expenses. The license was granted and the sale ordered, which took place on the 3d day of January, 1846. Amos E. Kimberly became the purchaser at $201, to whom the said Olds made a deed of conveyance. This deed constitutes one of the sources of the defendant's title, having derived from Kimberly whatever title he had obtained by his purchase at the alleged administrator's sale.

The exclusion of these deeds on trial below by the court, is now pressed as matter of complaint. But we are not prepared to gainsay the correctness of this ruling. They were offered to prove title in the defendant. Their admissibility for that purpose depends entirely upon the question whether the judge of probate possessed the power, under the law at the time, to license any one, except an administrator proper, to sell land to pay the debts of the estate. If he had not, all the proceedings in the premises were void.

The Statutes of 1843, page 677, very clearly define the extent of the particular powers and duties of a special administrator, showing, in the first place, that his appointment is contingent, and can only be made when for some cause, such as the pendency of a suit concerning the proof of a will, or some other cause, regular administration is delayed. His functions are limited to a few prescribed duties, in relation to the preservation of the personal assets, and these cease as soon as a regular administrator is appointed. He cannot be sued. The statute of limitations does not run against the creditors of the estate during the period of his agency. He is simply an agent, and not an administrator. He has no power to settle the estate; much less power to sell land for any purpose. It was no more competent for the judge of probate to grant him license to sell land, than that of any third person. His act in doing so was extra-judicial, and void. The judge's power over the real estate of deceased persons is derived through the medium of regular administration. This was wanting in

the case before us. Hence his jurisdiction did not, as it could not under the circumstances, attach. The argument, therefore, that the regularity of these proceedings could not be collaterally attacked, has no proper foundation. The law confers upon judges of probate jurisdiction over the settlement of the estates of decedents. This jurisdiction, however, only attaches and becomes effective after granting letters of administration to some one who is to exercise all the powers and duties of a regular administrator. This done, the power to grant a license to sell real estate to pay debts, nevertheless does not arise till a petition, as the law directs, is presented by a legal administrator. When such a petition is presented, jurisdiction over that particular subject is acquired, and the subsequent proceedings, although those of a court of inferior and limited powers, will be presumed as regular and conclusive as those of courts of general jurisdiction, and shall not be collaterally assailed. This, we suppose, is familiar law, but the presentation of a petition in this class of cases is not *enough;* it must be done by an administrator in the full statutory meaning of such a commissioned agent, and it is the union of both of these elements that constitutes the jurisdictional fact upon which the power of the court to act in the premises is made to depend, and they should both appear of record. So far, however, from this being the case, the record affirmatively shows that the petition was not presented by an administrator, but by a person who had no power whatever under the law to act, when the prayer of the petition was granted. And it is this feature of the case that distinguishes it from all the cases cited by counsel for the defendants.

Some of these cases referred to, arose in courts of general jurisdiction, where every intendment of the law is in favor of their proceedings, and of their jurisdiction. Other references, to be sure, are to the proceedings of inferior courts, with limited jurisdiction. But in all these

cases the jurisdiction had so far attached as to require and authorize the court to hear and determine the sufficiency of the facts relied upon to give jurisdiction, whether they related to the law itself, the process, the notice or the petition. Take, as an illustration, the case of *Morrow* v. *Weed*, 4 Iowa, 77, which is a very fair type of the principle involved in this class of cases. In that case there was a petition by an administrator proper for leave to sell the real estate, but the petition did not state the *value of the personal property*, as the statute required, and it was claimed that this statement was essential in order to confer jurisdiction, for it was insisted that without such statement the court could not determine whether the personal estate was insufficient to pay the debts of the deceased. It will be perceived that this objection goes a step further than the case at bar. It is based upon the idea that before a petition, presented by the right person, can give jurisdiction, it must also contain a statement of these facts required by the statutes. But the court in that case substantially, and we think properly, held that the power or jurisdiction of the court was called into action by the presentation of the petition, (of course presented by the proper person; in that case there was no pretence that the petition was presented by any other than an *administrator*.) And if in exercising its power the court should err in pronouncing the petition sufficient, when it was insufficient, or committed any other irregularity, it did not thereby lose again its jurisdiction, but that all such errors are to be corrected in a direct proceeding by appeal, and cannot be taken advantage of collaterally.

It is difficult to supply a rule under which to determine definitely what are or what are not jurisdictional facts, or, in other words, just when the jurisdiction of a court attaches in a given case. The case of *Morrow* v. *Weed*, *supra*, and the case of *Cooper* v. *Sunderland*, 3 Iowa, have

gone as far to sustain guardian and administrator's sales as the courts generally in this country have done.

Yet between the class of jurisdictional questions presented in these cases, and also in most of the cases cited by the defense, and the one raised at bar, there is a clear distinction. In the latter, the want of jurisdiction, for the reasons before stated, is obviously apparent upon the face of the proceedings. In such a case all presumptions are rebutted, and we are not allowed to indulge them. And this rule, in our opinion, is applicable in courts of superior as well as inferior jurisdiction. It follows that the proceedings under the unauthorized license of the judge of probate were nullities, and that the deeds in question were properly excluded.

*Second.* But the defendant offered other evidence of title, founded upon a tax sale which took place on the 10th day of April, 1843, for the delinquent taxes of 1841 and 1842. The certificate of purchase was originally issued to Wm. H. Tuthill, Esq., by him assigned to Stephen Whicher, who assigned the same to Amos E. Kimberly, to whom the deed was made on failure to redeem, and from whom the defendant derived whatever title it conveyed. The deed thus offered was unobjectionable in form, and by the revenue law of 1841, under the provision of which the sale took place, it was made *prima facie* evidence of the regularity of the sale. This feature of the revenue law of 1841, materially changes the rule generally adopted by the courts, that the party who sets up a title under such a sale, must furnish the evidence necessary to support it, independent of his deed, by showing that every prerequisite of the law had been complied with in conducting the sale. This provision of the statute shifts the burden of rebutting the presumption of regularity upon the plaintiff.

Inasmuch as the court ruled against the defendant's title derived from this source, he must have found that the facts

Long v. Burnett.

and circumstances developed by the evidence were sufficient to overcome the *prima facie* title made by the deed. Let us see what the plaintiff's evidence was in this respect. Ordinarily, we suppose, his method would be to show, from the records and files of the collector's office, that in selling the land for the non-payment of taxes there had not been a strict compliance with the requirements of the law. But this privilege was not accorded to him, for the reason no such record or files were *in esse*, or could be found in the collector's office. His witness, H. C. Pratt, testified that he had been treasurer and recorder of Cedar county for six years, during which time he took occasion to examine said office for the record evidence of the sales made by the collector for the taxes of 1841, and that he was unable to find any record evidence whatever of a sale for the taxes of 1841. That he had carefully and cautiously looked with reference to the pendency and object of this suit, and all that could be found was an entry of an order that there should be a tax of a certain amount levied for the year 1841, but no entry or evidence of a tax sale.

Samuel Wampler also testified that he was at that time treasurer and recorder of said county, that he had examined all the records back to the year 1841, that he found nothing indicating a tax sale in 1843, for the delinquent taxes of 1841 and 1842, not even a memorandum in regard to it. In this attitude of the case, what should be the effect of such testimony?

We are inclined to think that it must *ex necessitate* reshift the burden of proof upon the defendant, to account for the absence of this record evidence, or otherwise show from evidence *aliunde* that all the conditions or prerequisites of the law had been strictly observed in making the sale. Some rule must be adopted in cases of this kind, and we cannot perceive why the one suggested is not sound and reasonable. Surely, it is much easier for the ministers of

the law to show that certain steps had been taken, or for the purchaser to collect and preserve all the facts and muniments of title, on which the validity of his claim depends, than for the taxpayer or original owner to show that the provisions of the law had not been complied with. Indeed, this would be throwing upon the plaintiff the hardship of proving a negative, in this case, when the record evidence had never been filed, or if so had been removed. It is apparent that in every such case the original owner would be wholly without protection.

Now in answer to the above proof, the defendant fails to account satisfactorily for the non-existence of the collector's notice and return of said sale, or other record evidence of the same, but he does undertake to supply some evidence of the same by Judge TUTHILL, who stated that he purchased the property in controversy, that from certain circumstances mentioned he remembered seeing the delinquent list, and the warrant authorizing the sale, &c. Yet this goes a very short way in showing, as we think he was bound to do under the circumstances of this case, that the several steps prescribed by the statutes had been strictly followed.

It is true the defendant's deed undertakes to recite a compliance with the statutory provisions, but these recitals are not evidence against the owner of the property sold. 4 Hill, 76; 2 Denio, 323; 1 Selden, 366; 19 Barb. 644.

The deed shows that it had been drawn with great care and particularity, evidently indicating that the writer intended to set forth all that he thought the law required the officer to do in selling land for delinquent taxes, yet he did omit one requisite, that of stating, "after the clerk and assessor had corrected the assessment roll, and laid it before the board of commissioners, the said board, finding it correct, had accepted the same in writing on the back thereof, signed and attested by their clerk, and filed in his

office." A failure to make this statement in an undertaking to recite all the facts, is evidence, by implication, that it never had been done; if so, the omission vitiated the sale, and repels the *prima facie* force of the deed, according to authority of the case of *Rayburn* v. *Kuhl et al*, 10 Iowa, 92, which case turned alone upon this point.

The appellees make several other points against the validity of this tax title, the consideration of which we waive, except one, and that is this: The evidence shows that the certificate of purchase of the land in controversy, by Tuthill, was assigned by him to Whicher, before the two years in which to redeem had run out, and that Whicher at that time was the acting attorney for the estate of Robt. Long, deceased; that he stated to Tuthill at the time he purchased the certificate, that he stood in the place of the deceased, and represented the estate, yet he took the assignment to himself. It is insisted that this assignment in law inures to the benefit of the estate, under the circumstances. Payment of taxes, or the redemption of land sold for the non-payment within the prescribed time, is always a good defence against a tax title. Whether the estate of Long did redeem the land in question through Mr. Whicher, the attorney, is chiefly a question of fact, which it was competent for the court below to pass upon, but is not for us. We only refer to it as showing another probable reason, in the mind of the court below, for ruling against the defendant's title.

It only remains to say, that at the trial below it was admitted that the legal title of the land in dispute was in Robert Long at the time of his decease, and that it was still in the plaintiffs, his heirs, unless it had been divested by the defendant's several title deeds offered in evidence.

The court below held that it had not been, and such is our opinion.

Judgment affirmed.