JOHN HUNT, Jr., APPELLANT, *v.* ORLANDO LOUCKS, RESPONDENT.

EXECUTIONS—WHEN VOIDABLE.—If an execution directs the levy of more money than the judgment calls for, it is not for that reason *void*, but only *voidable*.

EXECUTIONS—WHEN AMENDED.—If an execution calls for too much money, it will not be set aside, but amended, so as to agree with the judgment, upon the application of the parties to it, or either of them.

EXECUTION SALES—WHEN VALID—WHEN VOID.—Sales to a *bona fide* purchaser under *voidable* executions are *valid*, though the executions be afterwards set aside, but sales under *void* executions are invalid, and pass no title, even to a *bona fide* purchaser.

COMMON LAW RULES AS TO VALIDITY OF JUDICIAL SALES UNCHANGED BY STATUTE.—The two hundred and thirty-seventh section of the code does not change the rules of the common law as to the validity of judicial sales, but guards against their mischievous consequences in certain cases, by affording a remedy which the common law does not.

BONA FIDE PURCHASER—WHO IS.—If a purchaser at a judicial sale be not a party to the execution, he is a *bona fide* purchaser; but whether he would be a *bona fide* purchaser, if a party to the execution, not decided.

EXECUTIONS NOT VOID.—Executions which have been issued according to the established course of practice, and are not so erroneous that they cannot be amended, are not void.

EXECUTIONS VOID.—Executions not under seal, issued from a Court which has been abolished, or is not of competent jurisdiction, or upon a void judgment, or upon a judgment against an administrator, or after the death of the judgment debtor, or after an appeal and stay—instanced by the Court as probable examples of void executions.

EXECUTIONS NOT OPEN TO COLLATERAL ATTACK.—Executions which are merely voidable cannot be attacked collaterally even by the parties to them, much less by strangers.

Idem.—The plaintiff in an action of ejectment relied upon an execution sale to which neither he nor the defendant was a party. The execution called for $695 more than the judgment, but corresponded with it in other respects. *Held*—That the execution was not void, but voidable only, and the sale therefore valid.

Executions not Irregular.—If the execution calls for the amount of the judgment in the Court below, and for the costs of an appeal also, it is not, for that reason, irregular.

Execution—Return of Immaterial.—If the return endorsed upon an execution fails to show a legal levy, or any levy, the purchaser's title is not prejudiced thereby, for it in no respect depends upon the return of the officer for its validity.

Appeal from the District Court of the Fifteenth District, City and County of San Francisco.

The plaintiff appealed.

The case is stated in the opinion of the Court.

*George F. & W. H. Sharp,* for Appellant.

*First*—If the execution was for an amount in excess of the judgment, it was not void. The writ of execution is simply designed to enforce the judgment, and if it called for a larger amount, it was not an absolute nullity, but voidable only as to the excess. (See *Peck* v. *Tiffany,* 2 Comstock, 458; *Bruce* v. *Westervelt,* 2 E. D. Smith, 440.)

*Second*—The policy of the law is to sustain rather than overthrow the sale for alleged defects of this character. (See *Jackson* v. *Roswell,* 13 Johns. 97.)

*Third*—The fact that the writ was for too large an amount, would not invalidate it, any more than in the case where the judgment was rendered for a sum exceeding the amount claimed in the summons — the analogy being complete. (*Bond* v. *Pacheco,* 30 Cal. 530; *Whitney* v. *Buckman,* 13 Cal. 539; *Doll* v. *Feller,* 16 Cal. 432.)

*Fourth*—The common law *stricti juris* construction of executions, is inapplicable under our code. (Practice Act, Sec. 213.)

*Fifth*—The sale is not open to collateral attacks. (*Johnson* v. *Lamping,* 34 Cal. 295; *Wheelock* v. *Waurshauer, Id.* 269; *Hahn* v. *Kelly, Id.* 391.)

_J. M. Seawell,_ for Respondent.

_First_—An execution which varies substantially from the judgment is void, and a sale under it passes no title. (Prac. Act, Sec. 210; _Watson_ v. _Fuller,_ 6 Johns. R. 282; _French_ v. _Eaton,_ 15 N. H. 337; _Slaughter_ v. _Fisher,_ 2 J. J. Marshall, 137; _Dennis_ v. _McLead,_ 8 Iredell, 221; _Palmer_ v. _Palmer,_ 2 Conn. 462; _Cushman_ v. _Carpenter,_ 8 Cush. 388; _Newson_ v. _Newson,_ 4 Iredell R. 381; _Smith_ v. _Knight,_ 11 Ala. R. 618; _Walker_ v. _McKnight,_ 15 B. Mon. 476.)

_Second_—The sale was also void because _one_ execution was issued on _two_ separate judgments. There were two separate and distinct judgments—the judgment of the County Court, and the judgment of the Supreme Court for costs on appeal. (_McMillan_ v. _Vischer,_ 14 Cal. 232; _Marysville_ v. _Buchanan,_ 3 Cal. 212.)

Both of these are lumped into one execution, and in the ·execution are recited as one judgment, and as rendered on January 17th, 1863. That such execution is void is held by the following authorities: _Rider_ v. _Alexander,_ (1 Chipman Vt. R. 267); _Merchie_ v. _Gaines,_ (5 B. Mon. 126;) _Den_ v. _Dayton,_ (8 Iredell, 453); _Town_ v. _Harris,_ (13 Texas R. 507); _Bani_ v. _Christinian,_ (27 Mo. 253.)

The execution defendants might wish to redeem from a sale under one judgment, and not from under the other. They are so mingled in the execution that they cannot be separated.

_Third_—The return fails to show a levy.

SANDERSON, J., delivered the opinion of the Court:

The plaintiff claimed title founded upon a sale under an execution, to which neither he nor the defendant's lessor was a party. In support of his claim he produced at the trial a judgment, execution and Sheriff's deed. To this testimony the defendant demurred, upon three grounds: First—That the execution was _void,_ because it varied materially from the judgment; Second—That it was void, because it appeared upon its face to have been issued upon two separate judg-

ments; Third—Because the return, endorsed upon the execution, did not show a sufficient levy.

In view of these objections, the Court below excluded the testimony, and the plaintiff was accordingly nonsuited. Whether this testimony ought to have been admitted, is the only question presented for our consideration.

*First*—The ground of the first objection was, that the execution called for $695 more than the face of the judgment. Was it for that reason *void*, and therefore the sale also? We think it was only *voidable*, and therefore the sale *valid*.

It cannot be denied that to sustain a title founded upon a Sheriff's sale, a judgment must be produced; an execution, which the Judge can affirm, was issued upon the judgment produced, and a deed which was given in pursuance of the execution and the sale under it. Unless it appear that the judgment, execution and deed are links of the same chain, the title will fail. But a question of variance between them must not be confounded with the question of their validity. The two propositions are quite separate and distinct. The former is a question of *identity* only—the latter assumes or concedes the identity, and goes only to the validity of the suspected instrument. If the execution differs so materially from the judgment that the Judge cannot affirm that the former was issued upon the latter, his conclusion is, not that the execution is *void*, but that it was not issued upon the judgment which has been exhibited with it. The conditions upon which the two questions arise, are not only different, but the question of void, or voidable, does not arise until the question of variance has been considered.

That this execution was issued upon the judgment which was exhibited with it does not admit of a rational doubt. The recitals in the execution correspond with the judgment in every particular, except as to the amount; the Court, the date, the parties, the general character of the judgment, are all correctly stated in the execution; and it is not pretended that there is, or was, any other judgment of the same Court, of the same date, between the same parties and of the same general character upon which the execution could have been

issued. Such being the case, there is no rational ground
for saying that the judgment and execution are not.parts of
the same judicial proceedings; and we do not understand
counsel as disputing this proposition, but as conceding it,
and insisting only that the execution is *void,* because it calls
for too much money.

That, as a general rule, an execution must follow the judg-
ment, and conform to it, and that if it varies materially from
it, it will be set aside, or quashed, or amended, as the case
may be, upon the motion of the parties to it, who are pre-
judiced by the error, is undoubtedly true, as appears by the
cases cited by counsel. But, that and nothing more being
shown, we have made but little progress in the present case.
The question is not as to what the Court would have done
with this execution if the defendants in the judgment had
moved to set it aside—to quash, or amend it, as they might
have done. If such was the question, it could be readily
answered. The Court would not have set it aside, but would
have allowed it to be amended so as to conform to the judg-
ment; that is to say, it would have quashed it only as to the
excess. (*Stevenson* v. *Castle,* 1 Chit. 349; *King* v. *Harrison,*
15 East. 615; *Morrys* v. *Leake,* 8 T. R. 416, note *a.*; *McCol-
lum* v. *Hubbert,* 13 Ala. 282.) But quite a different question
is here presented—one which rests upon entirely different
conditions, and involves altogether different principles : It
is as to what ought to be done with such an execution when
it comes before the Court collaterally as evidence of title in
an action which is not even between the parties to the execu-
tion, but between entire strangers to it, and where it is not
pretended that the execution was ever, at any time, even
after the sale, set aside upon the application of the parties,
who alone were injured by the error.

We understand the settled rule to be that if the execution
be merely *erroneous*—that is to say, *voidable*—a sale under
it to a *bona fide* purchaser will be valid, although the execu-
tion be afterwards set aside; but if the execution be *irregu-
lar*—that is to say, *void*—a sale under it, even to a *bona fide*
purchaser, will .also be void. (*Woodcock* v. *Bennet,* 1 Cow.
711.) Said Lord Chancellor Hardwicke, in *Jeanes* v. *Wilkins*

(1 Ves. Sen. 195): "To avoid the sale and title of the defendant"—purchaser—"it must be proved that the *fi. fa.* was *void*, and conveyed no authority to the Sheriff; for it might be irregular, and yet, if sufficient to indemnify the Sheriff, so that he might justify in an action of *trespass*, he might convey a good title, notwithstanding the writ might be afterward set aside." Said Chief Justice Savage, in *Jackson* v. *Cadwell* (1 Cow. 644): "It may be considered settled law that a *bona fide* purchaser at a Sheriff's sale acquires a valid title as against the defendant in the execution, unless it is not only *voidable* but absolutely *void.*" This is but an extension to cognate conditions of a rule which no one disputes—that a sale under an execution upon a judgment which is merely erroneous, and therefore only voidable, is valid if made to a *bona fide* purchaser while the judgment remains unreversed, though it be otherwise if the judgment be absolutely void. (*Harris* v. *Reynolds*, 14 Cal. 667 ; *Johnson* v. *Lamping*, 34 *Id.* 293.) The rule is founded upon considerations of public policy; and in Manning's case (8 Coke, 97, *a*), the reason is given thus : "If the sale of the term should be avoided, the vendee would lose his term and his money, too, and thereupon great inconvenience would follow, that none would buy of the Sheriff goods or chattels in such cases, and so execution of judgments (which is the life of the law in such case) would not be done ;" or, if done, it might have been added, so done as to greatly prejudice both debtors and creditors. It may be said that this reason, so far as it includes the loss of both the term and his money to the purchaser, is without foundation in this State, by reason of the 237th Section of the code, which has provided certain remedies to prevent such a loss ; but if so, the answer is that it was not the object of that provision of the code to disturb the rule of the common law in relation to the validity of executions or judicial sales, but to guard against its mischievous consequences in certain cases, by affording a remedy which the common law does not. It does not deal at all with the question as to when an execution or a sale shall be deemed valid and when not, but leaves

it as it was before, and merely provides that when, for any of the reasons given by the common law, a sale shall be declared void, the purchaser shall not be left, as at common law, without a remedy. (*Woodcock* v. *Bennet,* 1 Cow. 741.)

In conclusion, upon this branch of the general topic, it is proper to add that, according to some of the cases, a party to a judgment, or writ, is not a *bona fide* purchaser within the meaning of this rule, the reason given being that he is chargeable with notice of all defects in the judgment, or execution, as the case may be. Whether this distinction be well or ill founded is not pertinent to the present inquiry; for the purchaser in this case was not a party to the execution, and is therefore entitled to the full benefit of the rule.

It may not be easy to lay down a general rule by which, in all cases, the validity of an execution can be measured, and its qualities, as void or voidable, readily and accurately ascertained. An execution not under seal; or issued from a Court which has been abolished (*Lee* v. *Newkirk,* 18 Ill. 550); or out of a Court not of competent jurisdiction; or upon a void judgment; or upon a judgment against an executor or administrator (Probate Act, Sec. 140); or perhaps in any case where its issuing is prohibited by law or an order of the Court, as, for instance, when the judgment debtor has died (Probate Act, Sec. 141); or has appealed and given a stay bond—may all be examples of void executions, but we do not undertake to say they are; we merely refer to them by way of illustrating the difference between void and voidable executions. It has been said that if a state of facts exists at the time the execution is issued, in view of which it is unlawful to issue it, the execution is irregular, and therefore void. (*Woodcock* v. *Bennet,* 1 Cow. 739.) It is probable that the rule thus stated is too broad; and if it is not, it is quite certain that it is of little value as a guide, for in a certain sense every execution which has been issued when it ought not to have been has been *unlawfully* issued. Yet, by the cases, such executions are not always held to be void; as, for example, where they have been issued upon dormant judgments without leave. (*The State* v. *Morgan,* 7 Iredell, 387; *Dawson* v. *Shepperd,* 4 Dev.

497; *Mariner* v. *Coon*, 16 Wis. 465.) But, be that as it may, it is obvious, we think, that an execution which has been issued according to the established course of practice (*Luddington* v. *Peck*, 2 Conn. 702), and is not so erroneous that it connot be amended, is not and cannot be void. It has been said, and we think with truth, that whether an execution is. amendable is a test of whether it be *void* or only *voidable*. In *Parmlee* v. *Hitchcock* (12 Wend. 97), the Court said: "Whether the Sheriff is bound to execute an erroneous writ delivered to him, depends upon the question whether it is absolutely void or only voidable; and whether void or voidable, depends upon the fact whether it is amendable."

But however difficult it may be to declare a general rule upon this subject, it is not difficult, by the light of cases, to determine whether an execution be void or voidable, in a given instance. We therefore drop the further consideration of the rule, and turn to such cases as we have been able to find bearing directly upon the facts of the present case, and we have first to say that we have found no cases where it has been held that an execution, faultless in all other respects,. is void because through the misapprehension or mistake of the clerk it has been made to authorize the levy of too much money, and from the fact that our search has been attended with this result, we are led to believe that if such cases exist at all they are rare, and are departures from principle.

We are unable to distinguish between the case of an *alias* execution, upon which the clerk has failed to endorse money collected upon an original execution, *although it has been credited upon the judgment*, and the case of an original execution which has by mistake been made to call for too much money. The result is the same, and is due to the same cause—the result being the collection of too much money, and the cause being the mistake of the clerk; yet it has been held that such an execution is not void, and that a sale under it, to a *bona fide* purchaser, is valid. The same is true of executions issued upon judgments which have been already collected upon previous executions, but not so returned by the officer, or not so entered of record. (*Williams* v. *Gill & Co.* 6 J. J. Marshall, 487; *Luddington* v. *Peck*, 2 Conn. 700;

*Jackson* v. *Cadwell*, 1 Cow. 622; *Doe* v. *Snyder*, 3 How.
Miss. 66.)

But it is unnecessary to rest our conclusion upon what
may be said to be only analogous cases. The precise point
has been up repeatedly, and it never has been held, so far
as we are advised, that a mere excess renders an execution
void, or in any manner affects a sale under it to a *bona fide*
purchaser.

In *Avery* v. *Bowman* (40 N. H. 453), the judgment was for
$39 14 debt and $15 98 costs. These sums were stated
correctly in the recitals in the execution, but the clerk made
a mistake in adding them together, and accordingly the
directory, or mandatory, part of the execution called for one
dollar too much; yet it was held that neither the writ nor
the levy under it was void for that reason.

In *Brace* v. *Shaw* (16 B. Monroe, 82), there were two judg-
ments: one for $1,437 33, with interest from date, and the
other for $4,329 56, with interest from date. The execu-
tion upon the first called for $1,437 62, being twenty-nine
cents too much; the other called for $4,327 56, being two
dollars less than the judgment. Neither execution called
for interest. A sale of land under them to a *bona fide* pur-
chaser was declared to be valid, for the reason that the writs
were not void, but voidable only.

In *Jackson* v. *Walker* (4 Wend. 462), the judgment was for
$533 17, and the execution for $533 11, yet it was declared
to be amendable, and, for that reason, only voidable.

In *Jackson* v. *Page* (4 Wend. 588), the execution called for
fifty cents too much, yet the sale under it to a *bona fide* pur-
chaser was held to be valid.

In *Miles* v. *Knott* (12 Gill. & John. 442), the judgment was
for $235 83⅓, and the execution for $295 83⅓, being $60 too
much, but it was held that the title of a *bona fide* purchaser
under it was unaffected by the error. To the same effect is
*Parmlee* v. *Hitchcock*, (12 Wend. 96); and in this connection
we also refer to the following cases, where executions were
allowed to be amended (some of them being cases where the
error was as to the amount), and were held not to be void
merely because they were erroneous: *Stevenson* v. *Castle*, (1

Chit. 349); *Jackson* v. *Pratt*, (10 John. 381); *King* v. *Harrison*, (15 East. 615); *Morrys* v. *Leake*, (8 T. R. 416, note *a*); *McCollum* v. *Hubbert*, (13 Ala. 284); *Morse* v. *Dewey*, (3 N. H. 535); *Smith* v. *Keene*, (26 Maine, 420.)

We regard the foregoing cases as establishing beyond a rational doubt the proposition that an execution which is amendable is not void, and that an execution which merely calls for too much money is amendable. It is true, that the difference between the judgments and executions were not so great as in the present case, but no reference was made in any of them to the maxim, *de minimis non curat lex*, nor has that maxim, for obvious reasons, any application to questions of this character—it goes only to the question whether the amount *in dispute* is too trifling to attract the eye of the Court, and in no respect illustrates or controls a question of void or voidable process. To allow the amount of the excess —as much or little—to affect such a question, is not only to invoke a principle wholly irrelevant to it, but to proclaim that, in relation to a most important matter, there is no settled rule—that, if there is any variance at all, that circumstance does not establish the character of the execution as void or voidable, but its character must depend upon the varying notions of Judges as to what is or is not a trifle, which is to say that the validity of judicial process is not to depend upon established rules of law, but upon judicial discretion ; or, in other words, the purchaser is not to be told, in round terms which he can understand, that the execution is or is not void, and that he will or will not get a title if he buys, but that if he buys he must take the chances, and wait until his title comes, as it surely will, before the judicial eye for inspection, when he will be fully informed as to what, *in his case*, is a trifle or is not, and that accordingly he has or has not got a title. If it be the policy of the law to uphold judicial sales, we know of no way by which that policy can be more effectually defeated than by the adoption of such a rule of decision. We say *adoption*, because we are certain that no such rule yet exists. The cases to which we have referred make no mention of such a rule—they all proceed upon the theory that, in respect to mere variances between the judg-

ment and the execution, the latter is amendable, and is, there-
fore, not void, but voidable only.

That executions which are merely voidable cannot be
attacked collaterally admits of no debate, where, as in this
State, the common law controls the question.   A collateral
attack can no more be made upon an erroneous execution
than upon an erroneous judgment.   Like an erroneous judg-
ment, an erroneous execution is valid until set aside upon a
direct proceeding brought for that purpose ; and, until set
aside, all acts which have been done under it are also valid.
In a collateral action, it cannot be brought in question, even
by a party to it, much less, as in this case, by a stranger to
it.   Even directly it cannot be attacked by a stranger, for it
does not lie in the mouth of A. to say by it B. has been made
to pay too much money, and that therefore all proceedings
under it are null and void.   That is a question which con-
cerns B. only, and if he is content A. cannot complain.   Nor
if B., who is bound to know of the variance between the
judgment and the execution, does not interpose by motion
for its correction, ought he to be allowed to question the title
of a purchaser under it—it may be years afterward ?   He has
a remedy by motion to amend, or by action to recover the
excess of the levy from the plaintiff in the execution, and the
Clerk, also ; besides, with full knowledge of all defects, he
has allowed the Sheriff, acting as his agent in the matter, to
sell, and the purchaser to buy, without opening his lips, and
in all fairness and justice to the latter, he must keep them
closed forever.   (*Blood* v. *Light,* present term ; *Jackson* v.
*Bartlett,* 8 John, 361; *Jackson* v. *Robbins,* 16 *Id.* 537; *Mariner*
v. *Coon,* 16 Wis. 465 ; *Elliott* v. *Knott,* 14 Md. 121.)

*Second*—The ground upon which the second objection to
the execution rests is, that it included the costs of an appeal
from the judgment to this Court.   It was proper and regular
that it should.

*Third*—The last objection rests upon the ground that the
return endorsed upon the execution does not contain a report
in detail of the acts of the officer in making the levy.   It was
not necessary that it should.   If the return be defective for
the reason suggested, or for any other reason, the purchaser

would not be affected by the defect. Whether the return be
good or bad, sufficient or insufficient, is a matter of no
moment to the purchaser, for his title depends upon it in no
respect whatever.

Judgment reversed and a new trial granted.

SPRAGUE, J., expressed no opinion.