IN

# THE SUPREME COURT

OF

## THE STATE OF MISSOURI,

JANUARY TERM, 1873, AT JEFFERSON CITY, MO.

———

JOHN P. ELLIS, Respondent, *vs.* HENDERSON JONES, Appellant.

1. *Judgment; law extending lien of—Constitution.*—The legislature has power to
   pass a law extending the unexpired lien of a judgment from three, to five years.
2. *Judgment—Petition—Names of Parties—Variance—Scire facias.*—Where
   a petition was brought in behalf of John T. Dowdall, and three other plaintiffs
   therein named, a judgment thereon in behalf of John T. Dowdall & Co., is not
   void by reason of the apparent discrepancy.    And an execution on a *scire fa-
   cias* to revive such judgment, issued in the name of " John T. Dowdall," is not
   void by reason of its variance from the original judgment, particularly where
   the records of the court showed that no original judgment in behalf of "John T.
   Dowdall" had been docketed. Neither the original judgment nor the execution
   in the *scire facias* can be impeached collaterally or by a stranger.

*John S. Phelps,* for Appellant.

The writ of scire facias is a judicial writ; no petition is ne-
cessary to base it upon; and it is a continuation of the former
suit; 2 Tidd, 1096, 4th American edition; Humphreys vs.
Lundy 37 Mo., 320 ; State Treasurer vs. Foster, 7 Penn. St.,

65; Graham's Practice, 661, 663; 8 Bac. Ab., "*scire facias*," 598; Denyre vs. Hann, 13 Iowa, 240.

The judgment rendered in 1860 and entered in the name of Dowdall & Co., is amendable by adding the name of Dowdall's co-plaintiffs as stated in the petition and writ. Judgment may be awarded in affirmance of this by adding names of parties. (W. S. 1034, § 6; also 10th, 13th and 14th clauses § 19 and § 20 W. S. 1036–37.) And our statute of amendments extends to writs of *scire facias*. (1 Tidd P., 713,4th Amer. Ed.; Brittin vs. Wilder, 6 Hill, 242.)

The question of error or irregularity never can be discussed collaterally in another suit. It is not in issue in this action of ejectment. We are only to look to the judgment and cannot question its regularity. (Jackson vs. Robins, 16 Johns, 537, 575; Jackson vs. Bartlett, 8 Johns., 361; Stark vs. Gildart, 4 How. (Miss.,) 267; Van Campen vs. Snyder, 3 How. (Miss.,) 66; Winston vs. Affalter, 49 Mo., 263.)

In Durham vs. Heaton, (28 Ills., 264,) the court held, that where by the testimony of the keeper of the record there was no other judgment but the one in question on which the execution issued, though there was a variance in amount and names of parties to the judgment, the identity of the judgment was established. (See page 272.)

*Hardin & Ellis*, for Respondent.

The judgment could only be revived identically as rendered. (Humphreys vs. Lundy, 37 Mo., 320.) The petition for, and the issuing of, the writ of *scire facias*, are proceedings in the original action, must be to the same cause and between the same parties.

The writ of *scire facias* must pursue the original judgment. (Bacon's Ab. Title, "*scire facias*.")

SHERWOOD, Judge, delivered the opinion of the court.

This was an action of ejectment brought in the Greene Circuit Court by John P. Ellis, against Henderson Jones. At the trial the plaintiff showed a chain of title, for the land in

controversy, from the United States & mesne conveyance to M. E. Langston, and by said Langston to Harvey H. Neaves by deed dated February 7th, 1859, and from said H. H. Neaves to Thos. G. Neaves by deed dated December 18th, 1860. And the plaintiff to show that he had acquired the title aforesaid, read in evidence a deed made by Elisha Headlee, Pub. Admr. of Greene County, to plaintiff, dated February 18th, 1868, wherein it is recited that said Headlee, as Admr., of the estate of Thos. J. Neaves, deceased, was on the 23d day of August 1867, by the Probate and Common Pleas Court of Greene county, at its August term for that year, "ordered by an entry of record" to "sell under an *alias* order of sale, at public sale, to the highest bidder for cash" the above described land to pay the debts of said estate, that the land was appraised at $1600 and sold to plaintiff at the sum of $50 ; that *This sale* was approved by said court at the next term thereafter, etc., etc.

After the introduction of some testimony as to rents and profits, plaintiff rested.

The defendant then, to show an outstanding title in said land to T. R. Dodson, read in evidence a deed from the sheriff of Greene County to said Dodson, reciting a judgment rendered in the Probate and Common Pleas court aforesaid ,on the 4th day of June 1860, in favor of John T. Dowdall, and against Henderson Jones, Iridell Jones and Harvey H. Neaves for $695.90, the filing of a petition on the 13th day of March 1865, in said court, to revive said judgment, and to continue the lien of the same in force on the following real estate etc., (describing the land in controversy),.a judgment dated December the 19th, 1865, in said court, reviving said lien and ordering the lien to be enforced against the land aforesaid, the issuance of an execution on the judgment on the 13th day of February 1866, and the sale of the land in question on the 22d day of May, 1866, to Thos. R. Dodson for $1,182.34. This deed was filed for record on the 31st of the last mentioned month and year, and duly recorded. Defendant then rested.

The plaintiff then endeavored to show that the judgment revivor aforesaid was void, and that there was no such original

judgment as that of John T. Dowdall against H. Jones, Iredell Jones and Harvey H. Neaves, and introduced in evidence the records of said case as the same appeared on the records of the Probate and Common Pleas Court, and also, the file of pleadings in said cause. The petition therein showed the suit to be brought in the names of John T. Dowdall, James B. Dean, Henry Wiggenbone and Theodore V. Taylor, against Iredell Jones, Henderson Jones and Harvey H. Neaves on a promissory note ; and the record showed that defendants filed their answer, entitling the same as above, and subsequent entries in the record show that the cause afterwards proceeds in the name of "John T. Dowdall & Co., and John T. Dowdal *et al.* through all the various continuances, orders, etc., until it finally results in a judgment in favor of John T. Dowdall & Co., against Iredell Jones, Harvey H. Neaves and Henderson Jones" on the same date (the 4th of June 1860,) and for the same amount as specified in the sheriff's deed aforesaid, to Thos. R. Dodson. And the record further shows that at the May term 1865, of the said court, in the case of John T. Dowdall against Henderson Jones, Iredell Jones and Harvey H. Neaves, the writ of *scire facias* previously issued in the cause not having been served on the terre-tenants of Harvey H. Neaves, an *alias* was awarded in the name of John T. Dowdall, against said Jones & Jones and Neaves, reciting the fact of judgment rendered etc., as recited in the Sheriff's deed to Dodson on which defendant relied, and commanding the Sheriff to summon said Jones & Jones and Neaves, and all parties occupying the land in controversy to be and appear, etc. This writ was returned served as to Henderson Jones, and *non est* as to Iredell Jones and Harvey H. Neaves, whereupon an order of publication was made citing them to appear at the November term 1865 of said court, and show cause, etc., or the judgment aforesaid and the lien thereof would be *renewed* and continued in force " against the land aforesaid, and against the other property of said defendants." This publication conforms in all respects as to names, dates, amounts, &c., to the writ of *scire facias* in its various recitals. At the

November term aforesaid, a judgment of revivor was had conforming in all respects as to names of parties, dates, amount, &c., to the *scire facias* and publication, and reciting the fact of the appearance of Henderson Jones by attorney, and the service on the other defendants by publication, as above stated, and reviving for two years the lien of a judgment in favor of John T. Dowdall and against Henderson Jones, Iredell Jones and Harvey H. Neaves, rendered on the 4th day of June, 1860, and corresponding in all respects to the original judgment, except that the words "& Co." are not affixed to plaintiff's name, and against the land in controversy. This judgment of revivor also recites, that the petition for the issuance of the writ of *scire facias* was filed on the 13th day of March, 1865, and awards execution against the property in question. Among the papers on file in said cause, there is a petition for revivor of said judgment, filed December 9th, 1865, (but whether in vacation or term time does not appear) sworn to before the judge of the court and filed to supply, *nunc pro tunc*, a petition alleged to have been filed in that behalf on the 13th day of March, 1865. The execution awarded in conformity to the judgment of revivor pursues the original judgment, except that the words "& Co." are not annexed to John T. Dowdall's name. And the return on the writ of execution shows that the property in controversy was sold to Dodson, as recited in the Sheriff's deed. The plaintiff then proved that the case of John T. Dowdall vs. H. Jones, I. Jones and H. H. Neaves, was not docketed in the docket of the Probate and Common Pleas Courts at the May and November terms, 1865, and *that no other original judgment* was rendered by said court, in which John T. Dowdall was plaintiff or co-plaintiff, other than the above judgment of John T. Dowdall & Co., plaintiffs vs. H. Jones, I. Jones and H. H. Neaves. This was all the evidence.

The plaintiff then asked the court to declare the law to the effect:

That where a judgment is rendered for John T. Dowdall & Co., and the petition and process are in favor of John T Dowdall and three other plaintiffs, who are named, the *judgment is void*.

That all the proceedings to revive the judgment aforesaid were void, &c., &c. The court thus declared the law and defendant excepted.

The defendant then asked declarations of law to the effect: That the proceedings aforesaid were not void; that the title acquired by T. R. Dodson under these proceedings was valid and would defeat plaintiff's action; that if there were any errors or irregularities either in the original judgment or in the proceedings to revive the same, they were not fatal, and could only be taken advantage of in a direct proceeding for that purpose, and could not be made the basis of collateral attack; that if the Probate and Common Pleas Court acquired jurisdiction over the subject matter, and over the persons of defendants, the original judgment was not void; that if the lien of the original judgment, in favor of John T. Dowdall vs. Jones & Jones and Neaves, was kept alive by proceedings duly instituted on the 13th day of March, 1865, by petition filed for that purpose, and due notice of such intended revival given to defendants, and a judgment of revival afterwards entered thereon in conformity to such proceedings, that a sale thereunder would prevail over intermediate incumbrances or conveyances of land, to which the lien of such judgment attached; that the act of the Legislature in relation to judgments and decrees, approved March 17th, 1863, (Sess. Acts 1863, p. 24) was not unconstitutional nor retrospective, but prospective in its operation and operated on all judgments then in force, &c., &c.

The court refused to thus declare the law and defendant again excepted, and judgment going in favor of plaintiff, after an unsuccessful motion for a new trial, defendant brings this case here by appeal.

The original judgment was rendered in the Probate and Common Pleas Court on the 4th day of June, 1860, and the

lien thereby created continued until June 4th 1863. But the act approved March 17th, 1863, (Sess. Acts 1863, p. 24,) continued the lien of judgments then in force, for five years from the time of their rendition. The effect of this act was to continue the Dowdall judgment until June 4th, 1865, over the property in controversy, if the legislature had the power to enact such a law, and of this I have not the slightest doubt.

The deed of H. H. Neaves to Thos. G. Neaves is dated December 18th, 1860, and consequently the latter purchased the land in question while it was bound by the judgment lien. The court, however, declared that the judgment was *void*, because it was rendered in the name of "John T. Dowdall & Co.," when the petition and summons showed that the suit was brought in the name of John T. Dowdall and these other co-plaintiffs. As a matter of course, if the judgment was void, no lien could result therefrom or be the subject of extension by legislative enactment. That the Probate and Common Pleas Court had acquired jurisdiction in the suit of John T. Dowdall and others against Jones and Neaves, a mere glance at the records and proceedings in that cause will amply suffice to show, and that, where a court of limited jurisdiction once possesses itself of a cause and such fact affirmatively appears, every presumption and liberal intendment which pertains to the acts of courts of general jurisdiction and doings, immediately attaches with equal force to the acts and doings of the inferior tribunal, and where jurisdiction has once been acquired, no subsequent act however irregular · or erroneous will divest it, are propositions too plain and well settled to admit of a mo· ments discussion. (Long vs. Burnet, 13 Iowa, 28, II Sm. L. cas. 837 and cas. cit., *Id.* 847 and cas. cit., McNair vs. Biddle, 8 Mo., 257.)

The judgment referred to could have been amended; our statute expressly authorizes amendments to be made in such cases, and this capability of amendment is one of the *cheif* tests of jurisdiction. (Hunt vs. Loucks, 38 Cal., 372; 2 Wag. Stat., 1034, § 6; *Id.*, 1036, § 19; Sherman vs. Frean, 8 Abb. Pr. 33; 18 Ill., 416; 1 Mon., 252.)

The judgment, then, was not void and the court should have refused to so declare.

The Probate and Common Pleas Court, then, being possessed of the cause, steps were taken by Dowdall to revive and continue in force the lien of the judgment rendered in favor of " John T. Dowdall & Co.; " and the only remaining enquiries of material importance presented by this record, are not whether the action of said court in that regard was irregular or erroneous, but whether they were absolutely void; and whether there is a fatal variance between the execution which was awarded by the judgment of revivor, and the original judgment. A *scire faeias* to revive a judgment, is a judicial writ; is not a *new* suit, but is a continuation of the original action and merely auciliary thereto; does not operate to create a new lien, but to continue in force one already in existence; is simply a call or rule upon the debtor to show cause why execution should not issue ; and if no cause is shown judgment goes that the plaintiff have execution. The statute of 1855 did not require that a petition should be filed in order to sue out a writ of *scire facias*, but the act approved Feb. 15th, 1865, (Sess Acts, 1865, p. 46,) so amended § 7 (2 R. .C, 1855, p. 903) of the old law as to require this to be done.

That such a petition was filed before the issuance of the writ in the case under consideration, is established *prima facie* by the recitals in the Sheriff's deed to Dodson, and conclusively by the judgment of revivor. And the publication which was made subsequently to the filing of the petition, was a substantial compliance with the provisions of the statute, and the court thus had jurisdiction to render the judgment of revivor. Besides, the term at which the defendants were cited to appear by the publication was the time when they should have shown cause; and when they hold their peace, it certainly does not lay in the mouth of a stranger to the record, to complain.

In the case of Wood and Oliver vs. Ellis, (10 Mo., 382,) judgment was rendered against Pemberton by confession on a void warrant of Attorney. Afterwards Pemberton died, and a *scire facias* was sued out against his administrator to revive said

judgment; the administrator failed to appear and judgment of revivor, in consequence of such default, was taken against him.

Subsequently he endeavored to set aside the original judgment because of the defect in the warrant of attorney, and it was held that he was *too late* with his motion, that if the facts were as he claims, he should have appeared and filed his plea of *nul tiel* record ; that the judgment might have been set aside on motion *before* its revivor by *scire facias* but could not afterwards he called in question. And the court then cites with approval a case where a plaintiff had obtained a judgment against a defendant, and afterwards released it and then brought *scire facias* on the judgment ; and the defendant upon the sheriff's return of *scire facias* failed to appear and judgment was rendered ; and it was held that he could not have an *audita querela*, " for he had time to plead the release upon the *scire facias*, and having neglected it the law will not relieve him. "

Now if the principles enunicated in these cases are applicable to a judgment originally void, or to a judgment originally valid but subsequently satisfied, would they not be applicable with still greater force to this case where the judgment was simply irregular or erroneous? (See Waggoner vs. Lessee of Dubois, 19 Ohio, 67.)

As to the alleged variance between the executions under which the land in controversy was sold, and the original judgment.

In Jackson vs. Anderson (an action of ejectment) 4 Wend., 475, where there was variance between the judgment and execution, the court held that the validity of the execution was not affected by the variance; that it was amendable at any time as well after as before sale. And further, that the *identity* of the judgment with the one on which the execution was sued out was made manifest "by the bill in chancery introduced, and made evidence *by the defendant* in which the judgment and execution are set forth, and in which it is expressly alleged that the execution was issued on said judgment."

In Durham vs. Heaton, 28 Ill., 264, (also an action of eject-

ment) there was as, the court says, " a vast discrepancy " between the amount of the judgment as specified in the execution, and the amount of the judgment actually rendered. And the language of that court is so pertinent to the point in hand that I will use it:

"The defendant however insists that the variance is so great as to compel the inference that it (the execution,) did not issue on the judgment recovered, and that parol proof cannot be received to show its identity. He insists that the records of a court must prove themselves. As a general principle, this is true, but when it is shown to the court by the keeper of the records of a court, that there is no other judgment on those records than the one in question, the proof is as complete as if the records were present to be inspected. The fact is so or it is not so, and this is to be determined by the records, either by inspection or by the sworn testimony of the keeper who has carefully examined and searched them with a view to establish the fact.

Can a party take advantage of this objection, he being a stranger to the proceedings? If it was raised by the debtor himself, a different question would be presented, but even as regards him the execution would not be void. * * * * * The process would stand good until avoided in a proper manner. The defect in it cannot be taken advantage of by any one in a collateral action;—its validity was not affected by the variance ; it was amendable at any time, as well after as before the sale. So in Phillips vs. Coffee, 17 Ill., 154, this court held that a purchaser at a sheriff's sale, who is not a party to the proceedings, having a good deed, will not be defeated in his title by any defect or irregularity ; he relies upon the judgment, levy and deed ; all other questions are between the parties to the judgment and the officer. A stranger to the proceedings cannot question them collaterally. (Swiggart, et al., vs. Harber, 4 Scam., 364; Riggs vs. Cook, 4 Gilm., 336.) Whilst no one is bound by acts done under a void process, those are binding, which are done under erroneous or voidable process, and cannot be successfully

assailed except by a direct proceeding to set them aside not by "side wind," (see Hunt vs. Loucks, 38 Cal., 372, and cas. cit.; Winston vs. Affalter, 49 Mo., 263; Swan vs. Saddlemire, 8 Wend., 676.) Here the plaintiff, a stranger to the record, proved that *"no other original judgment"* was *rendered* by the Probate and Common Pleas Court in which John T. Dowdall was plaintiff or co-plaintiff, except that of John T. Dowdall & Co. agninst H. Jones, I. Jones and H. H. Neaves; thus identifying the judgment and bringing this case fully within the rule above stated.

I have carefully examined the record in this cause in the light of the authorities above cited, as well as numerous other analagous decisions, and am confident in the opinion that all the proceedings, both with respect to the original judgment and the means used to revive its lien, were substantially correct, at least, not void, and that Dodson acquired the title to the property in controversy by his purchase of the same, under the execution.

And I am free to confess that in view of the facts and circumstances of this case, I have not been unwillingly led to such conclusion. When a party buys in the land of his neighbor for a mere song, and then endeavors by some technical subtlety to overturn a title acquired for value and in good faith, he should, in order to succeed, be able to unequivocally establish that the law is with him.

With the concurrence of the other judges, the judgment is reversed and the cause remanded, with directions to the court below to proceed in conformity with this opinion.